F. NICHOLS-STEUART ET AL. V. MILDRED M. CROSBY ET AL.

No. 190.

| 87 | 443 |
| 92 | 218 |

1. Judgment Lien—Execution Sale.
   Judgment June 9, 1854, execution July 21, 1854; alias execution July 23, 1855. Levy and sale under the alias only conveyed the interest of the defendant, if any, at the date of the levy. The judgment lien was lost by the failure to issue an alias execution within one year after the original ...... 451

2. Estoppel.
   Smith's title was of record. O'Connor, who held a defective claim to the lot, offered it as security for a loan. The loan was negotiated by the brother of the owner of the money as his agent. In the discussion as to the loan, Smith, being present, stated to the agent that O'Connor's title was good. But for Smith's statement the loan would not have been made upon the land as security. The land by foreclosure passed to the lender of the money, and was by him sold. *Held*, that as against the heirs of Smith they were estopped from asserting title by reason of the acts of the ancestor, which constitute an estoppel. The heirs took no interest in the lot by inheritance, 451, 453

3. Bona Fide Purchaser—Inadequate Consideration.
   We are of opinion that the consideration of $5 paid for land then worth about $8000 is so grossly inadequate that a court of equity can not consider it as a valuable consideration, nor the purchaser a bona fide purchaser without notice ............................................................. 453

4. Same—Grossly Inadequate Consideration.

A purchaser may be a bona fide purchaser, and be protected against a superior title of which he had no notice in cases where he has paid less than the real value of the property; but where the price is grossly inadequate (as in this case), we are of opinion that he can not be considered either a bona fide purchaser or a purchaser for value, in a contest with the claimant of such superior title. We have been cited to no case where a court of equity has postponed a superior title in order to protect a purchaser for such a consideration .......................................... .................... 454

ERROR to Court of Civil Appeals for First District, in an appeal from Galveston County.

This was an action of trespass to try title for lot 531, in section 1, Galveston, containing twenty-six acres, brought by M. M. Crosby, Dixie Crosby, and William P. Crosby, claiming one-half, and A. Sampson, claiming the other half against M. Marx.

Marx impleaded on their covenants of warranty his immediate vendor William Reppen, and Steuart, Reppen's vendor, praying for judgment for his purchase money and interest in case plaintiffs should recover.

The defendants pleaded not guilty, and the statute of limitations. The defendants, Marx and Steuart, also relied upon an equitable estoppel in pais as against Dr. W. R. Smith, the ancestor and assignor of all the plaintiffs herein, and against Smith's heirs and representatives in interest. The Crosbys claimed as heirs of their mother, a daughter of Smith. Sampson claimed under execution sale against the only son of Smith. The son and daughter were his heirs.

Trial was had before the court, and judgment in favor of plaintiff Sampson for an undivided half-interest in the property sued for, and that the Crosbys take nothing by their suit; and that Marx recover the other half, and also recover of the warrantors for the failure of the half-interest recovered by Sampson.

Marx appealed, and in Court of Civil Appeals the judgment in favor of Sampson was set aside and judgment rendered for Marx for the entire tract sued for.

In application for writ of error by the Crosbys and Sampson, the complaint in error is as follows:

"1. In holding that the acts and statements of Dr. Wm. R. Smith, during the pendency of the negotiations for a loan of F. Nichols-Steuart's money to Cornelius O'Connor, in the presence of the former's agent, W. H. Nichols, were sufficient in law to estop said Smith and his devisees from claiming the land in controversy from parties deriving title under said O'Connor.

"2. In holding that the law inferred that Smith was apprised of his title to the land, at the time said declarations and conduct occurred, merely from the fact that his title was of record.

"3. In holding that in law said W. H. Nichols, as agent for F. Nichols-Steuart, was influenced, or could legally claim to have been influenced, by the acts and declarations of Smith, when the title of both Smith and O'Connor was spread upon the records of Galveston County, where the land lay, and where the parties were negotiating for the loan, and the extent and validity of Smith's claim was in law as well known to Steuart as to Smith.

"4. In holding that the payment of so small an amount by Sampson for the land bought at sheriff's sale did not in law constitute him a bona fide purchaser for a valuable consideration. [The facts are given in the opinion.]

*Lovejoy & Sampson, Wheeler & Rhodes, and Willie, Campbell & Ballinger,* for plaintiffs in error.—We contend: 1. That Dr. W. R. Smith himself was not estopped by any declaration or conduct of his detailed in the testimony from asserting title to the land in controversy against those claiming under the mortgage of Cornelius O'Connor to F. Nichols-Steuart.

2. That if any such estoppel existed against Smith, Alex Sampson, as a purchaser for value without notice, is not affected thereby.

First. The facts upon which the estoppel is claimed to rest are substantially the following. [See opinion.]

An analysis of this evidence shows, that at the time Steuart's mortgage was made Smith had upon the records of the county a clear legal title to the land and O'Connor had none, but had had possession of the same. If Smith was mistaken as to his ownership of the property, it was, of course, because he was either ignorant of the law that made his purchase from Watrous convey him a good title as against all subsequent purchasers from the same party under the judgment in favor of Moreland, or he was ignorant of the state of title shown by the record; and if Nichols supposed that O'Connor's title was good, it was because he, too, was ignorant of the law or condition of the record, as above stated, as to Smith's title, and that O'Connor had none. He nowhere states that he had seen Dr. Smith's deed on record, or that there was anything said in all the conversations about the loan touching this deed or of Dr. Smith's title to the land; nor does he say that he ever heard Dr. Smith say that O'Connor's title was good.

The case, then, is one where the party sought to be estopped is possessed of the clear legal record title to the land, but both he and the party claiming the estoppel are ignorant of the law which places the title in him, and suppose it to be in another, from whom the party claiming the estoppel proposes to take a mortgage upon the land, and the former stands by and hears the mortgage discussed by the proposed mortgagee without saying anything as to his title, and where the mortgage is taken, because the mortgagee knew that the mortgagor had

·been in possession for a long time and had made previous mortgages upon it, and supposed he had a good title, and the mortgagee had never heard of any claim of the true owner of the same.

The decisive questions of the estoppel are:

1. Admitting that ignorance of the law excuses both parties, are the facts in this case sufficient to have estopped Smith from asserting title to the land as against Nichols?

2. If ignorance of the law does not excuse, was Smith estopped, when Nichols was as much aware as he was of the true state of the title?

3. Does the case presented show that Dr. Smith, failing to make known his title, induced Nichols to take the mortgage upon the land?

In discussing these points we will refer first to the decisions of our Supreme Court, where the question of equitable estoppel has undergone frequent adjudication. Burleson v. Burleson, 28 Texas, 383, is a leading case.

This case counsel analyzed and discussed, as also the following: Scoby v. Sweat, 28 Texas, 713; Page v. Arnim, 29 Texas, 53; Boggs v. Mercer, 14 Cal., 367; Grigsby v. Caruth, 57 Texas, 271; Blum v. Merchant, 58 Texas, 400; Stead v. Petty, 65 Texas, 495; Bynum v. Preston, 69 Texas, 287.

From the above decisions we deduce the following principles: First, if Dr. Smith and Mr. Nichols were each excusably ignorant of the state of the title, the acts and declarations of Smith must have been the inducement for Nichols' action, and acted upon by Nichols in order to create the estoppel; second, that if Smith and Nichols were each of them well acquainted with or charged with notice of the state of the title, there is no estoppel; third, if the want of knowledge of the state of the title arose from ignorance of the law, then the case is to be treated as one where both parties were equally aware of it, and there is no estoppel; fourth, that Nichols must have been not only destitute of all knowledge of the true state of the title, but the means of acquiring such knowledge; fifth, that it must appear that Nichols was induced by Smith's conduct to take the mortgage, and that he would not otherwise have done so, and that the presence of the party sought to ·be estopped, and his failure to assert title, can not be said to induce it where the party buying did not know that he (Smith) had claim to the property.

From all these decisions it is clear that if both parties are chargeable with knowledge of the state of the title, as they are in law when all that pertains to that title is spread upon the records, there can be no estoppel, though the party sought to be estopped made declarations or admissions, or was guilty of other conduct inconsistent with his ownership of the land. Mills v. Graves, 38 Ill., 455.

Second. But admitting the estoppel to be binding upon Smith, it does not affect Sampson's title, he being a purchaser for value without

notice of the estoppel.    The record shows no actual notice to him, and he is not chargeable with constructive notice unless the view of the Court of Civil Appeals, that the smallness of consideration paid by him for the land, in connection with the fact that Dr. Smith had not exercised acts of ownership for a great number of years, was sufficient to affect him with notice of the estoppel.

That a bona fide purchaser for value is protected against an estoppel unknown to him, but binding upon his vendor, is well settled law, and admitted in the opinion of the Court of Civil Appeals.

That money, no matter how small in amount, is a valuable consideration, is too well settled to require argument.    The one who pays it parts with something of value to himself, and the one who receives it is benefited to the extent of the amount paid.    Whether a contract is to be specifically enforced or its rescission is sought, a money consideration will support it, however small the amount may be.    Something more than inadequacy of consideration must be shown to defeat the contract.    Where the amount is not grossly inadequate, satisfactory evidence must be shown of outside influences which tend to invalidate the contract.    When the amount is grossly inadequate, less evidence of such influences is required.    In the former case, no presumption against the contract can be drawn from the character of the consideration.    In the other, the smallness of the amount paid furnishes some evidence of fraud, but not sufficient in itself to defeat it.    Other evidence of fraud within the knowledge of the party paying the consideration is required.    Pollock on Con., 158, 543, and authorities cited; Pom. Spec. Perf., 272, et seq.    The same holds true in its full extent as to sales, whether judicial or otherwise.    Where land is purchased at execution sale and the consideration is paid in money, the sale can not be set aside, even on direct attack, merely because this money is a grossly and shockingly inadequate consideration for the land.    There must have been some fraud, accident, mistake, or irregularity in making the sale, or in the previous proceedings, which caused the property to be bid off for so small an amount, and the less this amount, as compared with the value of the property, the slighter need be the circumstances of fraud, accident, or mistake to destroy the sale.    Kauffman v. Morris, 60 Texas, 119; Chamblee v. Tarbox, 27 Texas, 146; Allen v. Stephens, 18 Texas, 658; Jones v. Pratt, 77 Texas, 210; Freem. on Ex., 309, and authorities cited; Herm. on Ex., 328.

These authorities are cited to show, that though the amount paid as the consideration of a contract is exceedingly small, the bona fides of the sale is not for that reason alone affected.

*Lovejoy & Sampson* and *Wheeler & Rhodes,* brief in Court of Appeals.—1. In order to apply an estoppel by conduct the following essential elements must be present in order to constitute this particular

estoppel: (1) There must have been a false representation or conceal-
ment of material facts. (2) The representation must have been made
with a knowledge of the facts. (3) The party to whom it was made
must have been ignorant of the truth of the matter. (4) It must have
been made with the intention that the other party should act upon it.
(5) The other party must have been induced to act upon it. And in
a case where the estoppel is invoked by a party it is incumbent upon
him to show by proof that all of said elements were present, or other-
wise there can be no estoppel. Bynum v. Preston, 69 Texas, 287; Grin-
nan v. Dean, 62 Texas, 218; Echols v. McKie, 60 Texas, 41; Blum v.
Merchant, 58 Texas, 400; Turner v. Ferguson, 58 Texas, 8; Peters v.
Clements, 52 Texas, 140; Watson v. Hewett, 45 Texas, 472; Page v.
Arnim, 29 Texas, 53; Burleson v. Burleson, 28 Texas, 383; Scoby v.
Sweatt, 28 Texas, 715; Bige. on Estop., 5 ed., 569; Id., 4 ed., 608, 609,
639; 2 Pom. Eq., secs. 805, 812, 813; Grigsby v. Caruth, 57 Texas, 271;
Stead v. Petty, 65 Texas, 495; Fielding v. Dubose, 63 Texas, 631; Brant
v. Coal and Iron Co., 93 U. S., 326; Sturm v. Baker, 150 U. S., 312;
Mills v. Graves, 38 Ill., 455; Boggs v. Mercer, 14 Cal., 367.

2. The conclusions of fact found by the court show that the appellee
was an innocent purchaser for value, without notice of the pretended
estoppel; and such finding is justified from the evidence adduced on
the trial of the case. The judgment of the court in appellee's favor
will not be disturbed, because appellee is entitled to protection as
against those who may have a mere equity in the property purchased
by appellee under such circumstances. Hill v. Moore, 62 Texas, 610,
and cases cited; Tied. Real Prop., sec. 731; Carpenter v. Buller, 8
Mees. & W., 212; 3 Washb. Real Prop., 91; Patty v. Middleton, 82
Texas, 586; Hensley v. Lewis, 82 Texas, 595; Smith v. Crosby, 23 S.
W. Rep., 10; Graves v. Williams, 74 Texas, 530; Jones v. Pratt, 77
Texas, 210; McKamey v. Thorp, 61 Texas, 648; Chamblee v. Tarbox, 27
Texas, 646: Maroney v. Boyle, 36 N. E. Rep., 511; Allen v. Stephens,
18 Texas, 658; Kaufman v. Morris, 60 Texas, 119; Ayres v. Dupree,
27 Texas, 594; Davidson v. Little, 22 Pa. St., 224; Wood v. Chapin,
13 N. Y., 509; Pollock Prin. of Con., 158, 343; Pom. Spec. Perf., 272,
et seq.; 1 Pars. on Con., 436, 437.

*W. M. Jerdone, Scott, Levi & Smith,* and *Robert G. Street,* for defend-
ants in error.—1. The facts show an estoppel against Smith. 7 Am.
and Eng. Encyc. of Law, 14; 3 Washb. Real Prop., 82; 2 Pom. Eq.
Jur., secs. 809, 810; Page v. Arnim, 29 Texas, 72; Mayer v. Ramsey,
46 Texas, 375; Burleson v. Burleson, 28 Texas, 383; Scoby v. Sweatt,
28 Texas, 713; Bynum v. Preston, 69 Texas, 287; Parham v. Randolph,
4 How. (Miss.), 451.

2. Sampson was not a bona fide purchaser, the consideration paid
by him being grossly inadequate. 16 Am. and Eng. Encyc. of Law,

828; 2 Freem. on Ex., sec. 344; Taul v. Wright, 45 Texas, 394; Weaver
v. Nugent, 72 Texas, 279; Dunn v. Barnum, 2 Texas Civ. App., 263;
Knapp v. Bailey, 79 Me., 195; Hume v. Frantzen, 73 Iowa, 25; Gaines
v. Saunders, 50 Ark., 322; Worthy v. Caddell, 76 N. C., 82; Evans v.
Welborn, 74 Texas, 530.

3. The doctrine enunciated in the opinion of the Court of Civil Ap-
peals on this subject—inadequacy of consideration—is not new even in
this State, having been distinctly declared and recognized by this hon-
orable court, speaking through Chief Justice Roberts, in the case of
Littleton v. Giddings, 47 Texas, 118. In that case a valuable league
of land had been purchased from one James Fisher, by Giddings,
Nunn & French, for a comparatively small consideration, and a war-
ranty deed executed for the same. Fisher had sold the land prior to
this sale and conveyance to one Sutherland, but the conveyance had
never been recorded. The chief controversy was over the question of
notice, to Giddings and those interested with him, of the former con-
veyance to Sutherland. Speaking to this question, Chief Justice Rob-
erts says: "The amount of the consideration given to James Fisher,
though an important matter in support of good faith in the purchase,
is not definitely proved. Nunn (one of Giddings' partners in the pur-
chase) states, that he (Fisher) and his children each received $52, prin-
cipally in goods, from his and French's store. This, if true, would ap-
propriately correspond with the consideration given for the purchase of
chance for the title to a valuable league of land on the Brazos river.
The principle upon which an unregistered elder deed to land must
yield its priority to a junior deed that has been first recorded is, that
the neglect to record the first deed has enabled the deceitful vendor to
impose upon one who has given a fair consideration for the land under
such circumstances as would reasonably justify an ordinarily prudent
man in believing that he was getting a good, valid title to the land in
making the purchase. The elder title must hold the land until the one
holding the junior title shall, under a proper charge of the court, show
himself to occupy such a position."

For the convenience of the court, we cite again the authorities re-
ferred to by us on this question: Littlejohn v. Giddings, 47 Texas,
118; Evans v. Wellborn, 74 Texas, 533; Tate v. Kramer, 23 S. W. Rep.,
257; 16 Am. and Eng. Encyc. of Law, 793, 828; 2 Freem. on Ex., sec.
344; 2 Pom. Eq. Jur., 206, 600; Tied. Eq. Jur., sec. 77, p. 95; 2 Warv.
on Vend., sec. 10; 1 Dev. on Deeds, sec. 733; Dunn v. Barnum, 2 Texas
Civ. App., 265; Ins. Co. v. Smith, 22 S. W. Rep., 629; Knapp v. Bai-
ley, 79 Me., 195; Hume v. Frantzen, 73 Iowa, 25; Gaines v. Saunders,
50 Ark., 322; Worthy v. Caddell, 76 N. C., 82; Phillips v. Pullen, 16
Atl. Rep., 11; Coffer v. Moore, 6 S. W. Rep., 307; Cutts v. Cisna, 7
Biss., 260; Peabody v. Fenton, 5 N. Y. Ch., 451, and notes.

DENMAN, ASSOCIATE JUSTICE.—On June 1, 1854, John C. Watrous was the owner of lot 531, section number 1, Galveston Island, containing about twenty-six acres, and all parties hereto claim under him as a common source. Said Watrous, July 8, 1854, executed a power of attorney to Martin, authorizing him to sell and convey this and other property to pay debts due Martin from Watrous, which instrument was duly recorded January 29, 1855.

February, 1855, Watrous, by said attorney Martin, in consideration of $500, executed to W. R. Smith a deed conveying this lot and others, which deed was duly recorded June 1, 1855. In 1873 Smith died testate, bequeathing all his property to his two children, J. M. Smith and Mrs. Crosby. Before the institution of this suit said Mrs. Crosby died, leaving her three children, Mildred, Dixie, and William Crosby, her sole heirs.

July, 1890, Alex. Sampson bought the interest of said J. M. Smith in said lot 531 and seven others, at a sale under an execution against said Smith, issued on a judgment rendered in favor of a loan company against said J. M. Smith, and paid for said lots at such sale the sum of $5 each, said judgment being for several thousand dollars.

Said three Crosby children claiming one-half of said lot 531 under their mother, and said Sampson claiming the other half as vendee of J. M. Smith at said execution sale, brought this suit in trespass to try title to recover from defendant Marx the land described in the deed to him hereinafter set out, being the greater part of said lot 531.

Marx claims title under the following facts:

Moreland, on June 9, 1854, in the District Court of Galveston County, recovered judgment against said Watrous, common source of title, for a sum of money on which judgment execution issued July 21, 1854, which was returned "nulla bona" August 12, 1854, and the second execution issued thereon July 23, 1855, under which the land was regularly sold in November, 1855, to C. B. Adams. In 1860 Adams conveyed the land to O'Connor. In September, 1871, O'Connor executed to a trustee for Frank Nichols-Steuart a trust deed on said lot 531 and other property, to secure the payment to said Steuart of notes aggregating $8804, representing money loaned by Steuart to O'Connor at the date of said trust deed. On November 20, 1873, the trustee conveyed said property to said Steuart in pursuance of a sale made under said trust deed. On July 25, 1877, said Steuart recovered, in the District Court of Galveston County, a judgment for all of said lot 531, except three acres off the northeast corner, against said O'Connor. March 5, 1890, Steuart conveyed 23¾ acres out of said lot 521, which appears to be what he recovered in said judgment, to Reppen, for $3770, and Reppen conveyed same land, on March 14, 1890, to Marx for $7125. All said instruments were duly recorded at time of their respective executions.

Upon the rendition of said judgment, June 9, 1854, in favor of Moreland against Watrous, it became a lien on said lot 531, then belonging to Watrous. It is conceded that such lien was lost, by reason of the fact that more than one year elapsed between the issuance of the first execution, July 21, 1854, and the issuance of the second execution, July 23, 1855, under which the sale was made. Therefore the sale did not foreclose the judgment lien, and did not pass such title as Watrous owned at the date of the judgment, June 9, 1854, but only passed such title as he owned at the date of the levy which was made after the issuance of the second execution, on July 23, 1855.

It appears from the above statement, however, that Watrous had, in February, 1855, conveyed the land in controversy to W. R. Smith by deed duly recorded June 1, 1855, and therefore Adams acquired no title by his purchase at such sale. It results, that upon the face of the record the plaintiffs Crosby and Sampson, claiming under W. R. Smith, have a superior title to defendant Marx, claiming under Adams.

Defendant Marx, however, claims that the superior title of W. R. Smith passed by estoppel to said Steuart, one of his remote vendors, by reason of the following facts found by the Court of Civil Appeals: "In 1871 O'Connor applied to W. H. Nichols, brother and agent of said Frank Nichols-Steuart for a loan of a considerable sum of money, offering as security the land in controversy and other lands. While the agent had the loan under consideration, W. R. Smith advised with him and discussed the security offered, and stated that he knew the land; that O'Connor had bought it before the war and had a good title to it; and advised Steuart's agent to accept it as security, and make the loan. The agent knew nothing of any claim to the property but that of O'Connor; had never heard of Smith's title to same, and in the conversation between them Smith made no mention of it. The agent being thus induced, and supposing O'Connor's title to be undisputed, and knowing nothing of the Smith title, made the loan, and subsequently, in order to pay the debt thus contracted, the land was sold and bought in by Steuart, still without any knowledge of any adverse claim; that neither Smith during his life, nor his executor after his death, ever made any claim to or paid any taxes on the land, and that no one has ever asserted title to it but those claiming under Adams, until about the time of the sheriff's sale under which Sampson bought. On the other hand, those claiming under the Adams title have paid taxes for thirty-five years or more preceding trial; have executed conveyances, mortgages, and other documents asserting title to it, and as early as 1868 or 1869 took actual possession, which, though not continuous, was from that time to the present occasionally maintained. It plainly appears, according to the evidence, that the decision to make the loan to O'Connor was not reached until after much deliberation and discussion, in which Smith took part, and it is evident that the applica-

tion would have been rejected had any mention been made of a claim adverse to O'Connor's. Smith's assurance as to O'Connor's ownership was in effect a statement that he himself had no claim to it, and probably so operated on the mind of Steuart's agent as to relax any efforts that might have been made to ascertain the true condition of the title. The money being in the hands of W. H. Nichols for investment, he consulted with his father and mother, who were also the father and mother of Frank Nichols-Steuart, as to the advisability of accepting O'Connor's application. The father favored and the mother opposed the loan; not, however, on a question of title. W. R. Smith was present at the discussion and was appealed to for his views, and gave them as before stated, cautioning the parties against any homestead claim or right O'Connor might have. This was investigated and adjusted, and the loan made. W. H. Nichols, testifying by deposition, does not mention the fact that Smith made the statement, but says that he was present and took part in the discussion. T. P. Nichols does testify, that the statement was made while the question of the loan was under discussion, and in the presence of W. H. Nichols and his father and mother; that Nichols did not know Smith had any claim to the land, though the deed was of record, and was not investigating with reference to it; but a clear inference from the transaction is, that had he been told of it he would not have made the loan, and that in this sense his action was influenced by Smith's affirmative statements. There is no direct evidence that at the time referred to Smith had in his mind his title to the land, but we hold that knowledge of such title must be imputed to him, and that his failure to mention it when he actively advocated the loan and made statements as to O'Connor's title, shows either an abandonment of it or culpable negligence."

In addition to the above, the undisputed facts in the record show that W. R. Smith, at the time said loan was made, was a man of considerable means, was a careful business man, and dealt largely in real estate; and was the family physician and an intimate friend of the Nichols family. If it be true that the deed to W. R. Smith was ever delivered to him so as to vest title in him, it follows that he made a false statement to W. H. Nichols' agent in stating that the title of O'Connor was good. Since the deed to Smith could not have become effective unless delivered to him, we are of the opinion that the Court of Civil Appeals were justified in imputing knowledge to him of its existence at the time he made the representation. We think said court was also correct in holding that the *constructive* notice of the deed to Smith, arising from its record, did not give Nichols *actual* knowledge of same so as to show that, notwithstanding Smith's misrepresentation of the title, still Nichols knew of Smith's deed. There can be but little doubt that under all the circumstances Smith intended his statements to be acted upon, and that they were acted upon and did influence

Nichols to make the loan, as found by the Court of Civil Appeals. The essential elements of an estoppel by conduct are said to be, (1) a false representation of material fact; (2) such representation must have been made with knowledge of such facts; (3) the party to whom the representations were made must have been ignorant of the truth of the matter; (4) it must have been made with intent that it be acted upon; (5) it must have been acted upon. Big. on Estop., p. 25; 2 Pom. Eq. Jur., secs. 779–782, inclusive.

We can not say, as a matter of law, that the evidence did not justify the court in finding the facts as above set out. On such finding, the conclusion of law arrived at by the trial court and the Court of Civil Appeals, that such facts estopped Smith and all persons claiming under him, except bona fide purchasers for value without notice, from asserting the Smith title against the Nichols trust deed, is correct.

By virtue of the estoppel, the title of W. R. Smith vested in Frank Nichols–Steuart upon his purchase at the sale under the trust deed; prior to that time it was merely a security for the debt. Therefore the Crosby heirs, claiming by devise from Smith to their mother, and by inheritance from their mother, took no title, and were not entitled to recover. It is clear, also, that when Sampson bought at execution sale the interest of J. M. Smith, in 1890, J. M. Smith had no title to the land, it having passed from his father by estoppel as aforesaid.

But Sampson claims that he, at said execution sale was a bona fide purchaser for value, without notice of the facts constituting the estoppel. This contention must be true in order to authorize a recovery by him.

The execution sale may have been sufficient to pass to him the title of J. M. Smith in a controversy between them, and still not sufficient to put Sampson in a better position than J. M. Smith would have been had he sued to recover the land from Marx before the execution sale.

Sampson does not ask to be allowed to recover only such interest as his vendor in execution, J. M. Smith, had, but seeks to be placed, in a court of equity, upon higher grounds, upon the theory that he is a bona fide purchaser *for value, without notice* of the estoppel which passed the title from W. R. Smith to Steuart.

We are of opinion that the consideration of $5 paid by Sampson for land then worth in the neighborhood of $8000 is so grossly inadequate that a court of equity can not consider *it* a valuable consideration, nor *him* a bona fide purchaser without notice, within the meaning of the rule. A purchaser may be a bona fide purchaser for valuable consideration and be protected against a superior title of which he has no notice, in cases where he has paid less than the real value of the property; but where the price is *grossly inadequate*, as in this case, we are of the opinion that he can not be considered either a bona fide purchaser or a purchaser for value in a contest with the claimant of such

superior title. We have been cited to no case where a court of equity has postponed a superior title in order to protect a purchaser for such a consideration. Rev. Stats., art. 2318; McKamey v. Thorp, 61 Texas, 652; Worthy v. Caddell, 76 N. C., 82; Dunn v. Barnum, 51 Fed. Rep., 358; Knapp v. Bailey, 79 Me., 195; Hume v. Frantzen (Iowa), 34 N. W. Rep., 490; Phillips v. Pullen (N. J.), 16 Atl. Rep., 10; Curts v. Cisna, 7 Biss., 267; Hoppin v. Doty, 25 Wis., 589; 2 Dev. on Deeds, sec. 733; 2 Warv. on Vend., p. 610, sec. 10.

The cases in which the defendant in execution seeks to set aside the sale on the ground of inadequacy of price are not in point, for in such cases no attempt is made to postpone or set aside a superior title to protect the purchaser at execution sale. Weaver v. Nugent, 72 Texas, 275; Kauffman & Runge v. Morriss, 60 Texas, 121; Jones v. Pratt, 77 Texas, 211.

It follows, that we are of opinion that the Court of Civil Appeals were correct in reversing the judgment of the court below and rendering judgment in favor of defendant Marx, and it is ordered that the judgment of the Court of Civil Appeals be affirmed.

*Affirmed.*

Delivered January 28, 1895.