## CAMILLA G. DAVIS v. W. A. BELL ET AL.

Decided April 19, 1910.

**1.—Innocent Purchaser—Valuable Consideration—Attorney in Fact—Evidence.**

Expenses incurred and time spent by an attorney in investigating the title to a tract of land in contemplation of securing from the supposed owner a power of attorney coupled with an interest in the land, can not be regarded as part of the consideration paid for the conveyance subsequently secured so as to constitute the attorney a purchaser for value. Such claim could be based only upon expenses incurred and services rendered after the power was secured and in performance of the duties imposed by the contract.

**2.—Same.**

An attorney who incurs expenses and performs services in consideration of an interest in land, after notice that his client or principal had no title thereto, can not claim to be an innocent purchaser of the same.

**3.—Innocent Purchaser—Inadequate Consideration.**

A grossly inadequate consideration paid is inconsistent with a plea of innocent purchaser.

**4.—Same—Index to Deed Record—Notice.**

One who sees in the index of the deed records of a county, evidence of the existence and record of a deed affecting the title to land he contemplates purchasing, can not by failing to examine and read the record claim to have no knowledge or notice of the facts of which the recitals in said deed would have acquainted him.

**5.—Attorney in Fact—Notice of Adverse Title.**

In a suit by an attorney in fact for an interest in land acquired by and through a power of attorney, evidence considered and held insufficient to support a claim of being an innocent purchaser of such land for a valuable consideration.

Appeal from the District Court of Trinity County. Tried below before Hon. S. W. Dean.

*Baker, Botts, Parker & Garwood,* for appellant.—The power of attorney under which the appellee Bell claims the land in controversy is merely an executory contract to convey the legal title to a one-half interest in any land owned by the maker of said instrument and recovered by the attorney in accordance with the terms thereof. Said land was not and had never been owned by the maker of the instrument, nor had she ever had any right, title or interest therein; and the services contemplated were never performed. It was therefore error for the court to render judgment in favor of said Bell for a half interest in said land. Cooper v. Mayfield, 57 S. W., 48; Hazlett v. Harwood, 80 Texas, 510.

It appeared without controversy that the record title to both the 320 acre surveys involved herein was in appellant, unless appellee Bell was, under his power of attorney, an innocent purchaser in good faith for a valuable consideration without notice, and the burden of proof was upon him to show that he was such purchaser. The court therefore erred in rendering judgment in his favor for a half interest in said land upon the theory that he was such purchaser, because his own evidence conclusively showed that he had actual notice of the conveyances from Kimbrough to Geo. W. Davis which recited the conveyance from Collins to Yoakum, and was therefore put upon inquiry as to the title claimed by them. Jenkins v. Adams, 71 Texas, 4; Traylor v. Townsend, 61 Texas, 146; Watkins v. Edwards, 23 Texas, 447.

Said Bell, under said power of attorney, was not a purchaser for value, because all the evidence showed that at the time of the execution of said power the value of the land was from $1,600 to $5,000, the overwhelming preponderance being in favor of the latter amount, and that the expense incurred by him was trifling, amounting to not more than $10 or $11 in money, and one day's time. The alleged consideration is so grossly inadequate as to be, in law, no consideration at all. Moore v. Curry, 36 Texas, 669; Mansfield v. Neese, 21 Texas Civ. App., 587; Nichols-Steuart Co. v. Crosby, 87 Texas, 453.

A past consideration is no consideration. Davis v. Anderson, 99

Va., 620, 39 S. E., 588; Stoneburner v. Motley, 95 Va., 784, 30 S. E., 364; Utah Sav. & Trust Co. v. Bamberger, 81 Pac., 887.

Said Bell was not an innocent purchaser, because all the evidence shows that he acquired by the power of attorney merely a chance of title, as in a quitclaim deed, and not title to any particular tract of land. Rodgers v. Burchard, 34 Texas, 452; Thorn v. Newsom, 64 Texas, 164; Richardson v. Levi, 67 Texas, 363; Garrett v. Christopher, 74 Texas, 454; Daugherty v. Yates, 13 Texas Civ. App., 651; Laughlin v. Tips, 8 Texas Civ. App., 652.

*Hill & Elkins,* for appellees.—The power of attorney from Mrs. Douglass to Bell conveyed an undivided one-half interest in "Abstract Nos. 137 and 138, for 320 acres each, located in Trinity County, Texas," the land in controversy; said conveyance took effect upon delivery, and was not executory in its character of a conveyance. Garner v. Boyle, 97 Texas, 464-465.

In order to constitute one an innocent purchaser, it is not necessary that he should pay a fair price for the land. Eastham v. Hunter, 102 Texas, 145; Nichols v. Crosby, 87 Texas, 453.

The amount of the purchase price, if otherwise in good faith, is not generally material: Pomeroy's Equity Jurisprudence, sec. 747.

If there is an actual value properly paid, the amount is not material if the transaction is otherwise in good faith: Wood v. Chapin, 13 N. Y., 509; Cary v. White, 52 N. Y., 138; Pickett v. Barron, 29 Barb., 505; Seward v. Jackson, 8 Cow., 406, 430; Westbrook v. Gleason, 79 N. Y., 23.

Mere inadequacy of price can not affect the title of a bona fide purchaser, and is no evidence of any other fraud. Two Rivers Mfg. Co. v. Beyer, 17 Am. St. Rep., 131.

Mere inadequacy of price is not a ground upon which to set aside a sale: Sams v. Sams, 85 Ky., 396; Scoggin v. Schloath, 15 Ore., 380.

Even gross inadequacy of price is not sufficient to avoid sale: Peterson v. Little, 74 Iowa, 223.

While no test of adequacy applies to all cases, courts are not prone to refuse to confirm a sale for mere inadequacy of consideration: Coles v. Coles, 83 Va., 525; Weaver v. Nugent, 13 Am. St. Rep., note p. 800.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title to two 320-acre surveys in Trinity County, patented to Thomas P. Collins.

The suit was originally brought by J. L. Lubbock against appellant. W. A. Bell and Mary C. Douglass intervened in the suit and asserted title to both of said surveys. When the cause was called for trial Lubbock and Mary C. Douglass failed to appear and prosecute their claims, and the trial proceeded between Bell and appellant and resulted in a judgment in favor of Bell for an undivided one-half of both of said surveys.

The facts disclosed by the record are as follows: The two surveys were patented by the Republic of Texas to Thomas P. Collins

in February, 1846. On April 5, 1852, Collins conveyed both tracts to Henderson Yoakum. This deed was recorded in the deed records of Trinity County on the day of execution. On April 25, 1856, Yoakum conveyed said lands to James A. Wright by a deed which was also duly recorded in said deed records. Wright conveyed the two tracts to J. A. Kimbrough in 1871. This deed was also recorded in Trinity County shortly after its execution. In September, 1872, Kimbrough conveyed the two tracts to George W. Davis by separate deeds. These deeds, which were recorded in the Trinity County deed records on May 30, 1877, describe the lands as the two surveys "granted by the Republic of Texas to Thomas P. Collins on February 10, 1846, and conveyed by the said Thomas P. Collins to Henderson Yoakum by deed dated the 5th day of April, 1851, and on record on pages 12, 13 and 14 of the Trinity County records aforesaid, to which deed, as well as said letters patent, reference is now here made for better description as to the metes and bounds."

Appellant is sole devisee of George W. Davis, who died in 1878, and is the independent executrix of his will.

Mary C. Douglas is the daughter and sole heir of Thomas P. Collins. The records of Trinity County were destroyed by fire in 1872.

The deeds from Thomas P. Collins to Henderson Yoakum and from Yoakum to Wright were not re-recorded after the burning of said records until November 2, 1903, and June 1, 1907, respectively. The deed from Wright to Kimbrough was lost and never re-recorded. No possession of the land by anyone was shown except for a few years between 1872 and 1875.

On July 13, 1903, Mary C. Douglass executed the following power of attorney to appellee, W. A. Bell:

"The State of Texas,
 County of Houston.
 "Know all men by these presents, That I, Mrs. Mary C. Douglass, a *feme sole*, daughter and sole heir of T. P. Collins, dec'd, for divers good and sufficient reasons and consideration thereunto specially moving, have this day made, constituted and appointed, and by these presents do make, constitute and appoint W. A. Bell, of Trinity, in the county of Trinity and State of Texas, my true and lawful attorney, for me and in my name and place and stead to discover, enter upon and take possession of, hold, grant, sell and convey such land, tenements and hereditaments, situated in the State of Texas, which I might own or may be entitled to, or in which I may have any right, title or interest or claim, and which my said attorney may discover, especially abstract Nos. 137 and 138 for three hundred and twenty acres each, located in Trinity County, Texas; and in pursuance hereof, my said attorney is hereby fully authorized and empowered for me and in my name, place and stead, in all things as fully as I might or could do if personally present and acting, to adjust, settle and compromise any adverse claims to said land, to institute and defend any suit or action at law or in equity that he may see proper; to compromise, settle or dismiss any such

suit; to enter appearance and sign all papers, process, bond and other document in and about such proceedings; to sell or exchange said lands in whole or in part on such terms as my said attorney may deem best, and for that purpose to execute and deliver in my name all such deeds or conveyances as he may consider proper; to receive and collect all money arising out of said transaction, sale or compromise necessary to secure to me the peaceable possession of the same; hereby giving and granting to my said attorney full power and authority to do and perform any and all acts and things whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation; hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do in the premises by virtue hereof. And whereas said W. A. Bell will probably have to incur considerable expense, and will probably have to employ legal counsel to assist him in said business, therefore, in consideration of the services performed and to be performed by the said W. A. Bell, and the further consideration of one dollar to me in hand paid by the said W. A. Bell in the business above mentioned, I do hereby give, grant, sell and convey unto the said W. A. Bell one undivided half of the hereinbefore described lands, tenements and hereditaments.

"To have and to hold the said lands and premises unto the said W. A. Bell, his heirs and assigns forever.

"In testimony whereof, I have hereunto set my hand and seal at Crockett, Texas, this 13th day of July, A. D., 1903.

"Mary C. Douglas.    (Seal.)"

The value of the land at the time this power of attorney was executed, as fixed by appellee, was $2.50 or $3 per acre. Appellant's witnesses valued it at about $6 per acre.

After she had intervened in the suit Mary C. Douglass discovered that her father had conveyed the land to Henderson Yoakum, and upon making this discovery she conveyed all her interest in the property to H. Yoakum, the son of her father's grantee. Her deed contains the following recital:

"This deed is made to H. Yoakum, son of Col. Henderson Yoakum, to show that I make no claim to said lands whatever that my father sold long before his death. And any power of attorney I have given to recover the above described lands is hereby revoked, as I have no interest whatever in same, nor have I ever received any consideration from anyone for this land, or any part of it."

Bell claims that, acting under the power of attorney before set out, he performed services and incurred expenses of the value and amount in the aggregate of $252, and such services having been performed and expenses incurred by him without knowledge or notice on his part of appellant's title or claim to the land, he is an innocent purchaser for value of the one-half interest in said land conveyed to him by said power of attorney. In support of this claim he testified that before taking the power of attorney he examined the records of Trinity County and failed to find any conveyance of the

land by Collins, and that at the time he secured said power of attorney he had no knowledge that Collins had ever conveyed the land. His itemized claim for the value of his time and services and the expenses incurred by him in his efforts to perfect the title to the land in Mrs. Douglass and himself, is as follows:

| | | |
|---|---|---|
| 1. | Paid G. C. Clegg for opinion | $50.00 |
| 2. | Paid Jake Lenard for inspecting land | 7.50 |
| 3. | Paid J. A. Chessher for inspecting land | 2.50 |
| 4. | W. A. Bell, one trip to land | 30.00 |
| 5. | W. A. Bell, three trips to Groveton | 90.00 |
| 6. | W. A. Bell, one trip to Crockett | 30.00 |
| 7. | W. A. Bell, exp. three trips to Groveton | 4.50 |
| 8. | W. A. Bell, expense to Crockett | 3.85 |
| 9. | W. A. Bell, one trip to Huntsville | 30.00 |
| 10. | W. A. Bell, expense to Huntsville | 3.10 |
| 11. | Consideration named in deed | 1.00 |
| | Total | $252.45 |

His testimony in regard to these items is as follows:

"In answer to the question to state what I have done, if anything, towards carrying out this contract with Mrs. Douglass to recover this land, I will answer that I have given it considerable thought and sent some men out to investigate it and see the physical conditions, and there was at one time a question as to whether a man by the name of Allen was on it, and I had that investigated; it was my information that he was very near the land, and his house was very near on it, but wasn't on it. I investigated to see if there was anybody on it. I sent a man out to go over the land; I sent two men. I sent two men at two different times, and one man at two different times. In answer to the question to state what expense I incurred in making that investigation, I will state that I just made in the last day or two—I didn't keep any itemized account of this at the time, and I can only state from memory—and in the last day or two I have concentrated my mind on it and can now fix the amounts. One man was named Jake Lenard, and I paid him $7.50, and another man was J. A. Chessher, and he lived near the land, and I allowed him for one day, $2.50; I mean I paid him that; those were reasonable and necessary charges, in my judgment, for that; that was little enough. I made one trip out there myself. I went out there to inquire about the land and look after it, and see what kind of country it was in; and before I got the power of attorney I consulted an attorney, and while I haven't agreed with that attorney as to the amount, I feel like in such matters he would be entitled to about $50. I consulted an attorney for legal advice on the subject of this title. The attorney was G. C. Clegg. He is a practicing attorney in this county. That was a part of the contract in carrying out my contract with Mrs. Douglass, but this was before. It was just a few days before. Clegg was my attorney at the time, and I consulted him frequently. I have handled other matters of

this kind for myself. In doing this, it is my custom and practice, and necessary, in my judgment, for me to consult an attorney. I did consult Mr. Clegg. I took legal advice from him. That was before the power of attorney was executed. If I hadn't gotten legal advice in regard to this title before, it would have been necessary, in my judgment, for me to have gotten it after I got the power of attorney. The customary and reasonable charge in that class of cases for that kind of advice was $50. I have never had any settlement with Mr. Clegg. I haven't had a settlement with him in ten years. I keep accounts against him and he keeps accounts against me; several hundred dollars on both sides, I reckon. In answer to the question to state what other items of expense I incurred, I will state, the best I remember now, I made three trips to Groveton and one trip to Crockett in regard to this land, and one in the country, as I stated awhile ago, and one trip to Huntsville. The purpose of the trip to Groveton was to examine the records and try to ascertain what information I could get about the land, and the trip to Crockett was to see Mrs. Douglass about the land, and the trip to Huntsville was to consult attorneys and employ attorneys. I went to employ attorneys in connection with this land, and to carry out the contract with Mrs. Douglass. Those trips, in my judgment, were necessary for the purpose of looking after and the protection of the interests of my client under this power of attorney. In answer to the question as to what expense I incurred on those trips, I will state the best I can remember now, the expense to Groveton was about $1.50 each trip—three trips. To Crockett, I think it was $2.85, and possibly a dollar for buggy at Crockett to go out to see Mrs. Douglass; she lived about a mile and a half from town. And to Huntsville, my expenses there, actual expenses, were $3.10. I was engaged three days on my trips to Groveton, and one day to Crockett and one day to Huntsville, and one in the country; that would be six days. That much time was reasonably necessary to accomplish the purposes I had in mind. I can only estimate what my time was reasonably worth at that time by what I have made; I will say it was thirty dollars a day. I arrived at that estimate because I had made as much as thirty dollars a day during all those years. That would, in round numbers, be about $10,000 per year. My time had been worth that to me in that time."

He further testified that a month or two after he procured the power of attorney he was informed that Collins had conveyed the land to Henderson Yoakum and that the original deed evidencing this conveyance had been found and filed for record in Trinity County. He paid no attention to this information and did not examine the deed. Upon the question of notice of the existence of such a deed at the time he procured the power of attorney he further testified:

"I examined the records of Trinity County. I don't really believe I saw anything here on record in Trinity County putting the title to this land in Thos. P. Collins. I can explain how I got my information about that. I knew that Mrs. Douglass was the heir of Thomas P. Collins by inquiry. I made inquiry as to that. I came

out to Groveton and made a personal examination of the records of Trinity County. I don't think I had the aid of anyone to assist me in doing that, unless it was the clerk. I don't think I had the benefit of an abstract of title to this land in making that examination. I don't think 'I saw any deed on record here, or any instrument on record in the deed records of Trinity County putting the title in Thomas P. Collins. That was what I was hunting for. I don't think I found anything. I don't remember that I found anything on the records affecting the title to these two 320-acre surveys, except on the index I saw a deed conveying from Kimbrough to somebody, I afterwards learned—I don't think I knew then—that it related to these two Collins surveys.

Q. "What was it about the Kimbrough deed that fastened itself on your mind about this land?

A. "I think I took the abstract and traced it out when I had the abstract made.

"When I examined the records of this county with reference to the Collins title I found on the index an instrument from J. A. Kimbrough to somebody that I recalled afterwards as affecting the title to these two 320-acre surveys. That is true. I had not found anything up to that time showing the title in and to the man Collins that I was looking for. I know the deed I saw on the index attracted my attention as touching on those two 320-acre surveys.

Q. "You have just stated to the court that you were making an examination with reference to that, and you yourself alluded to the fact that you saw this deed from Kimbrough to somebody; what was it that made you remember that you saw that deed or index?

A. "The abstract; I expect I have seen every man's name on it. I don't know why the name of J. A. Kimbrough would fasten itself on my mind to this particular tract of land. You asked me the question if I ever saw this name, and I said I expect I had, because I had seen every man's name on it.

Q. "I (Mr. Carter) asked you if you found any deed of record or instrument affecting this land, and in answer to that question you stated that you saw on the index the mention of a deed from J. A. Kimbrough to somebody affecting these two 320-acre surveys of land when you were examining the records with a view to determining whether there was any title to Collins?

A. "I saw it in a general way. I saw it at the time I was making that examination. I did not know George W. Davis in his lifetime. I saw his name mentioned. I know that he owned a whole lot of land here. I do not know that he was quite a prominent lawyer here at one time. I have not heard in the history of this county (Trinity) that George W. Davis practiced law here years ago. I know that he owned a great deal of land in this county.

Q. "Ain't it a fact that the deed you saw was from J. A. Kimbrough to George W. Davis?" A. "I saw it on the index record."

"I have found out since and I now know that the letter of the index which I saw at that time was the index of a deed from J. A. Kimbrough to George W. Davis of these two tracts of land. I don't remember now the name of the man that followed after the name of

J. A. Kimbrough on the index at that time. I will tell you how that is; when I examined the records—I examined them for a number of different purposes, and I suppose I have read everyone's name on the index maybe several times, and I couldn't say now that I haven't seen anybody's name. I expect I have seen them all, and it didn't impress itself on me until after I got this conveyance and had an abstract made, and then, of course, I saw this deed in the abstract, and then it impressed itself on me, and that is the way it occurred. I don't know whether the index that contained the name of J. A. Kimbrough, which I say I saw at that time, following on the same line, also contained the name of George W. Davis, grantee, or not. I think that is the way the index is prepared when it is properly prepared."

We do not think the evidence sustains appellee's claim of innocent purchaser for value. Under the rule announced in Garner v. Boyle, 97 Texas, 464, appellee became, under the power of attorney from Mrs. Douglass, a purchaser of a one-half interest in the land, that is, the power of attorney conveyed to him one-half interest in the land and such conveyance took effect upon the delivery of the instrument, and was not an executory contract to convey; but we do not think the evidence shows that he gave a valuable consideration for such conveyance. It is not definitely shown by the evidence that any of the items in the account, upon which he bases his claim of purchase for value, were for services rendered or expenses incurred by him after he had procured the power of attorney and before he knew of the existence of the deed from Collins to Yoakum. The items of attorney's fees and the trip to Groveton to examine the records and to Crockett to obtain the power of attorney were expenses and services incurred and performed before the power of attorney was executed, and can not be regarded as part of the consideration given by appellee for the conveyance. These services were not performed, nor the expenses incident thereto incurred, under the contract with Mrs. Douglass and in no way inured to her benefit. They were wholly voluntary on appellee's part and in incurring such expense and giving his valuable time to the investigation of the title to this land he was doing so for the sole purpose of acquiring for himself an interest therein. His investigation of the records may have led him to believe that Mrs. Douglass owned the land and he was thereby induced to enter into the contract with her and procure the power of attorney by which he was conveyed a one-half interest in the property, but the costs of such investigation can no more be regarded as a part of the consideration given by him for such conveyance than the voluntary expenses of any prospector who examines and investigates the title to land before he purchases same can be regarded as a part of the consideration paid the owner for the land.

It is clear that the expenses incurred by appellee after he had notice of the deed from Collins to Yoakum can not be regarded as part of the value paid by him for the land without notice of the appellant's claim. This is a self-evident proposition. To hold otherwise would be to hold that one having a power of attorney from A to recover land belonging to the donor of the power, after dis-

covering that the land supposed to belong to A is the property of B, may resist B's claim and spend money in trying to defeat B's title and thereby become an innocent purchaser for value of B's land. This proposition is certainly unsound both in logic and law.

It may be inferred from the evidence that the expense of sending the two men out to look at the land and ascertain if there was any adverse possession thereof was incurred after appellee procured the power of attorney and before he had notice of the conveyance by Collins. If the ten dollars that he says he paid those men for such investigation can be properly regarded as consideration paid by him for the land, it is so grossly inadequate as compared with the value of the property that it can not support the plea of innocent purchaser. Nichols-Steuart v. Crosby, 87 Texas, 453.

While appellee's testimony as to whether he knew, at the time he examined the records and found the index of a deed from Kimbrough to Davis, that said deed purported to convey the land in controversy, is halting and contradictory, we can not say that the finding of the trial court that he did not at that time know that the deed shown by the index purported to convey this land, is without any evidence to support it. It does not affirmatively appear that the index showed that the deed from Kimbrough to Davis purported to convey this land. If this fact had been shown, we would not hesitate to hold that appellee could not close his eyes to this record and, failing to read the deed, claim to have no knowledge or notice of the facts of which the recitals in said deed would have acquainted him.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*