**A. T. HALBERT, Appellant,**

v.

**T. A. UPSHAW, Appellee.**

No. 3618.

Court of Civil Appeals of Texas.

Eastland.

March 31, 1961.

McMahon, Smart, Sprain, Wilson & Camp, Abilene, for appellant.

Andrews & Andrews, Stamford, for appellee.

GRISSOM, Chief Justice.

A. T. Halbert sued T. A. Upshaw, who resides in Jones County, in Stonewall County for an eighth of the minerals in a tract of land in Stonewall County. Upshaw filed a plea of privilege to be sued in Jones County. His plea was sustained. Halbert has appealed.

Halbert contends the court erred in sustaining Upshaw's plea because this is a suit for the recovery of land situated in Stonewall County which he is entitled to maintain there under exception 14 to Article 1995, Vernon's Annotated Civil Statutes. It was established that the land is in Stonewall County. The only other venue facts necessary to be shown is that this is a suit for the recovery of land. If Halbert's pleadings reveal that the main purpose of his suit is to recover an interest in said land then he is entitled to maintain his suit in Stonewall County. Said exception provides that suits for the recovery of land must be brought in the county in which the land lies. Halbert alleged he was the owner and in possession, or entitled to possession, of an eighth interest in the minerals in certain land in Stonewall County. His petition contained the formal allegations of a suit in trespass to try title, but he specially pleaded his title, alleging the common source of title was McRimmon and Cullum and that, in May, 1945, they conveyed said land to Upshaw, reserving one-fourth of the minerals but only for a term ending in April, 1960; that in October, 1952, Upshaw told Halbert that for a certain consideration he would procure and deliver to Halbert a conveyance of a one-eighth interest in the minerals in said land which would give Halbert a perpetual one-eighth royalty under any lease; that, relying upon Upshaw's representation, Halbert agreed to purchase same and paid to the grantors in said mineral deed, McRimmon and Cullum, $15,000 and to Upshaw $2,500; that Upshaw prepared the deed, had it executed by McRimmon and Cullum and delivered it to Halbert; that it purported to convey to Halbert a one-eighth interest in the minerals. Halbert alleged that he did not know that McRimmon and Cullum had conveyed the land to Upshaw and had reserved one-fourth of the minerals for only a term ending in 1960, and had no knowledge of the ownership other than as it was represented to him by Upshaw and, since Upshaw owned the land and knew the limitation on McRimmon's and Cullum's reservation, and by his misrepresentation caused Halbert to purchase and pay for more than his grantors owned, Upshaw was estopped to deny that the mineral deed, which he prepared and caused the grantors to sign, and which he delivered to Halbert and represented to Halbert conveyed, as on its face it pur-

ported to convey, a one-eighth interest in the minerals in perpetuity actually conveyed anything less; that, unless Upshaw was compelled to act consistently with his representations, Halbert would lose the interest which he bought and paid Upshaw to obtain and that he would have no interest therein after April, 1960, and therefore, Upshaw was estopped to assert title to said one-eighth interest adversely to Halbert and contrary to the title and interest which Upshaw represented that Halbert was obtaining and which said deed purported to convey to Halbert.

Upshaw contends that since Halbert specially pleaded his title and his pleadings negative any title in Halbert, that Halbert's suit is to recover by virtue of an estoppel based upon an equitable right to acquire title as distinguished from an equitable title, and, therefore, the suit is not one for the recovery of land under Article 1995, exception 14.

We agree with Upshaw that Halbert is limited by his special pleading of title and that he must recover, if at all, upon his plea of estoppel. The court apparently agreed with Upshaw that Halbert is attempting to enforce an equitable right as distinguished from an equitable title, and, therefore, that this is not a suit for the recovery of land. That presents the controlling question.

Appellant contends that his pleadings show he is asserting title to a one-eighth interest in the minerals; that he is not attempting to first have a judgment establishing some right, such as setting aside a deed, or reforming a deed, but that Upshaw cannot assert that Halbert does not own the title which Upshaw purported to have conveyed to him and that the alleged conduct of Upshaw is as effectual as a deed from Upshaw to Halbert. In Nichols-Steuart v. Crosby, 87 Tex. 443, 29 S.W. 380, 382, it was held that when the holder of a record title to land applied for a loan thereon and a third person advised the lender that the applicant owned the land and the lender, relying thereon, loaned the money taking a mortgage on the land as security, such third person was estopped to assert title to the land, although he held under a prior deed from the person holding the paramount title. Under such a situation our Supreme Court said:

"On such finding the conclusion of law arrived at by the trial court and the court of civil appeals that such facts estopped Smith and all persons claiming under him, except bona fide purchasers for value without notice, from asserting the Smith title against the Nichols' trust deed, is correct. By virtue of the estoppel, the title of W. R. Smith vested in Frank Nichols-Steuart upon his purchase at the sale under the trust deed. Prior to that time it was merely a security for the debt. Therefore, the Crosby heirs, claiming by devise from Smith to their mother, and by inheritance from their mother, took no title, and were not entitled to recover. It is clear, also, that when Sampson bought at execution sale the interest of J. M. Smith, in 1890, J. M. Smith had no title to the land, it having passed from his father by estoppel * * *."

In Daugherty v. Templeton, 50 Tex.Civ. App. 304, 110 S.W. 553, 558 (Writ Ref.), the court said:

"The disclaimer made to appellee by John M. Lewis to the effect that he did not own, or claim, the land in controversy, when acted on by the defendant, as found by the trial court, was sufficient to estop said Lewis and the plaintiffs, who claim under and in privity with him, from ever thereafter asserting title to said land adversely to the claim of this defendant, and the trial court correctly so held."

In Kempner v. Huddleston, 90 Tex. 182, 37 S.W. 1066, 1067, our Supreme Court quoted with approval the following:

"That where the true owner of property holds out another, or allows

another to appear, as the owner of, or as having full power of disposition over, the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected; or, where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of these who caused such action, the rights so acquired are secure, whether contested at law or in equity. Such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from an act of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale."

See also 31 C.J.S. Estoppel §§ 21, 35, 59, pp. 203, 211, 239, and Omohundro v. Matthews, Tex., 341 S.W.2d 401, 405.

While it is sometimes difficult to distinguish between the allegations of an equitable title and an equitable right, we think Halbert's pleadings assert an equitable title.

In McDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334, 338, our Supreme Court held that an action to recover a half interest in overriding royalties, on the theory of a constructive trust in that plaintiff and defendant were joint owners of the royalties and that defendant procured new leases in his own name to the exclusion of plaintiff to defeat plaintiff's claim to royalty, was a suit for an "equitable title" as distinguished from a mere "equitable right". In Stafford v. Stafford, 96 Tex. 106, 70 S.W. 75, 76, the court said:

"* * * The action was brought for the recovery of real estate, and therefore does not come within the terms of article 3358. It is not necessary for us to determine whether the facts constitute a mortgage or a trust, because, if it be a mortgage, the title was in B. F. Stafford, and upon that he could maintain this action. If it were held that the transaction constituted a trust to R. E. Stafford, then B. F. Stafford was the beneficiary of that trust, and held the equitable title to the land, which, upon the tender of the sum due, became absolute, and he could institute this action to recover the land without previous suit to declare the existence of the trust. * * * In Secrest v. Jones, the vendor had given a bond for title to the land in question, and the purchase money had been paid. The vendor refused to convey the land, and the vendee brought an action of trespass to try title, and it was held that upon the payment of the purchase money the title became absolute ·in the vendee. There can be no question that the equitable title to this land was in B. F. Stafford under the allegation of his petition, and he could maintain such action for the recovery of the land as might have been maintained if he had the complete legal and equitable title. The fact that he set out the facts which constituted his cause of action does not change the character of the suit. It is as much an action for the recovery of real estate as if it had been in the form of trespass to try title."

In Hall v. Rawls, Tex.Civ.App., 188 S.W. 2d 807, 813, it was held that proof of a parol trust and of plaintiff's right to land thereunder constituted proof of an equitable title, not of a mere equitable right. See also Johnson v. Wood, Tex.Com.App., 138 Tex. 106, 157 S.W.2d 146.

In Brown v. Gilmore, Tex.Civ.App., 267 S.W.2d 908, 910, 911 (Writ Dis.), McCauley, in January, 1939, conveyed some land to Mrs. Roberts, reserving one-half of the royalty for fifteen years and as long thereafter as oil was produced therefrom. A few days before expiration of said fifteen year period, Mrs. Roberts conveyed the land to her daughters. In the deed from McCauley to Mrs. Roberts it was provided

**258**

that Mrs. Roberts and her heirs and assigns should have the exclusive right to lease the land. The suit was brought by Gilmore, who had purchased the term royalty reserved by McCauley. He alleged that the deed from McCauley to Roberts created a relationship of trust and confidence; that there was a market for a lease on the land and if it had been leased and a well drilled it would have produced oil from which Gilmore would have obtained royalty during the fifteen year period and thereafter that Mrs. Roberts and her daughters violated the duties and obligations incident to such relationship by refusing to lease for the purpose of depriving Gilmore of his royalty interest. The court held that it was a suit for the recovery of land and that venue under exception 14, Article 1995, was in the county where the land lay. It said:

"It is appellees' theory that the breach of duty to lease by the grantee and her assigns created a constructive trust to protect the term royalty. The petition reflects a fraudulent purpose on the part of grantee and her daughters to defeat the term royalty and acquire all the minerals for themselves. If plaintiffs succeed in impressing the section of land or the possibility of reverter with a constructive trust they will have recovered an interest in the land; therefore the nature of the suit revealed by the petition is a suit for the recovery of land within the purview of Subdivision 14."

To the same effect was the holding in Calvert v. Greene, Tex.Civ.App., 326 S.W. 2d 592, 594, wherein the court said, "The controlling factor is not that plaintiff has title, as disclosed by the facts, but that by his allegations he claims title."

If we assume, as we must for present purposes, that plaintiff's allegations are true, Upshaw, as the paid agent of Halbert, procured and purported to have conveyed to Halbert a one-eighth interest in the minerals knowing that the parties whom he caused to execute said deed would not have

title thereto after 1960, but that he would then hold such title. Under such circumstances Upshaw is in no better position than if he had purported to convey said minerals to Halbert and had thereafter acquired the title. See 31 C.J.S. Estoppel § 35, p. 212. We believe the facts alleged show that this is a suit for the recovery of land within the meaning of exception 14 to Article 1995. It is undisputed that the land is in Stonewall County. These are the two essential venue facts. Having established them, Halbert is entitled to try his case in Stonewall County. The judgment is reversed.