## LISSNER v. STATE MORTGAGE CORPORATION et al.

### No. 8451.

Court of Civil Appeals of Texas. San Antonio.
June 11, 1930.

Ingrum & Smith, of San Antonio, for appellant.

Ridgeway & Palmer, of San Antonio, for appellees.

FLY, C. J.

This is a suit to set aside two judgments for taxes and sales of certain real estate made thereunder, said judgments being in favor of the state of Texas and against Edna Meyer, adjudged insane by the county court, Alfred Lissner having been duly appointed guardian of the estate of said insane person. The case is brought before this court on the findings of fact of the district judge, which are necessarily the conclusions of fact of this court and are adopted as such and copied herein, omitting copies of a judgment obtained by the mortgage company against Mrs. Meyer, as well as a contract of sale made by and between the mortgage company and N. N. Basila, which will be stated in substance by this court:

"On August 18, 1925, Edna Meyer, ward of plaintiff herein, was the owner of Lot 5, Block 6, New City Block 1908, in the City of San Antonio, Texas, having acquired the same from R. B. and Edith Allsup by deed dated November 28, 1921, and recorded December 5, 1921, in Vol. 657, page 540, of the deed records of Bexar County, which deed recites consideration paid by said Edna Meyer for said property of $3,800 cash.

"On the above date the State of Texas filed suit in this court against Mrs. Edna Meyer in cause No. A–39,478 to recover taxes due on said property for the year 1924, and interest and penalties thereon, in the sum of $24.84; on August 27, 1925, citation in said cause was delivered to said Mrs. Edna Meyer; no answer was filed or appearance made by or on behalf of said Mrs. Edna Meyer in said cause, and on February 27, 1926, judgment was rendered in said cause in favor of the State of Texas against Mrs. Edna Meyer for $32.36, with foreclosure of the tax lien on said property; on March 29, 1926, order of sale issued in said cause commanding the Sheriff or any Constable of Bexar County to seize and sell said property as under execution to satisfy said judgment; and on May 4, 1926, after duly publishing notice of said sale, and after mailing a copy of said notice to the said Mrs. Edna Meyer, said property was offered for sale at public vendue and struck off and sold to the defendant, State Mortgage Corporation, at a price of $43.09, being the amount of said judgment, interest, costs and costs of sale, and on the same date said property, in pursuance of said sale, was conveyed by James Stevens, Sheriff of Bexar County, who had executed said order of sale, to the said State Mortgage Corporation, and which said conveyance was thereafter recorded and is now of record in Vol. 892, pages 118–119 of the deed records of said Bexar County, and which said deed contained the following provision: 'Provided, nevertheless, that said land herein conveyed may be redeemed by the proper owner thereof, or anyone having an interest therein, within two years from date of said sale in the manner provided by law.'

"On September 15, 1926, the State of Texas filed suit in this court in cause No. A–45,566 against the said Mrs. Edna Meyer, ward of the plaintiff herein, for the recovery of taxes on the above described property for the year 1925, in the amount of $23.49 including interest and penalty on said taxes; on September 21, 1926, a citation in said cause was delivered to said Mrs. Edna Meyer; no answer was filed or appearance made in said cause by or on behalf of said Mrs. Edna Meyer and on November 30, 1927, judgment was rendered in said cause in favor of the State of Texas and against the said Mrs. Edna Meyer in the sum of $31.89, and for costs of suit and foreclosure of the tax lien on said property; on December 8, 1927, order of sale issued in said cause commanding the sheriff or any Constable of Bexar County to seize and sell said property as under execution to satisfy said judgment, and thereafter on January 3, 1928, after due publication of notice of said sale, and after mailing a copy of the said notice to said Mrs. Edna Meyer, James Stevens, Sheriff of Bexar County, in pursuance of said order of sale, struck off and sold said property at public vendue to the said defendant, State Mortgage Corporation, for the sum of $41.96, being the amount of the judgment, interest, costs of court and costs of sale; on the same date, to-wit: January 3, 1928, the said James Stevens, Sheriff, conveyed said property to said State Mortgage Corporation in pursuance of said sale and which said conveyance was thereafter recorded and is now of record in Vol. 1001, pages 580–581 of the deed records of said Bexar County; said conveyance contained the following provision: 'Provided, nevertheless, that the land herein conveyed may be redeemed by the proper owner thereof, or anyone having an interest therein, within two years from date of said sale, in the manner provided by law.' * * *

"On the 27th day of October, 1928, this present suit was filed by Edna Meyer, by and

through her next friend, Alfred Lissner, in the said 94th District Court of Bexar County. On said 27th day of October, 1928, at 2:11 o'clock P. M. lis pendens notice of this suit was duly filed, indexed and recorded in the lis pendens records of said Bexar County in book Vol. 4, pages 238–239; thereafter said Alfred Lissner, as guardian of the estate of said Edna Meyer, who had, after the filing of this suit, been adjudged insane, was substituted in this cause as plaintiff; thereafter this cause was transferred from the 94th District Court of Bexar County, Texas, to this court, by order of said 94th District Court.

"The said property, to-wit: Lot Five (5), Block Six (6), New City Block Nineteen Hundred and eight (1908) situated in the City of San Antonio, Bexar County, Texas, being the property in controversy in this suit, was and is at all times herein concerned, that is to say, on May 4, 1926; on January 3, 1928; on May 8, 1928; on October 19, 1928, and at, during and since all of said times, of the reasonable market value of $7500 and at and during all of said times and at this time the title to said property was and is vested in said Edna Meyer, unless the same has been divested out of her by the deeds and judgment hereinbefore set forth, and subject only to such rights, title and interest which said State Mortgage Corporation may have by virtue of said deed and judgment.

"At, during and between all the times herein concerned as above set forth, and on and continuously since August 18, 1925, the said Mrs. Edna Meyer was and is insane and incompetent to understand the purpose or effect of any of the proceedings hereinbefore referred to, or of looking after or understanding her own affairs, property and interests.

"The only right, title and interest that the defendant State Mortgage Corporation had in or to said property at the time of the rendition of judgment for the title and possession of said property in the 94th District Court in said cause No. B–50,121 was under and by virtue of the Sheriff's sales and deeds for taxes hereinbefore referred to, and the only evidence of title introduced by said State Mortgage Corporation in said cause No. B–50,121, and the only evidence on which said judgment therein was based, was the proceedings, sales and deeds in and in pursuance of said tax suits, No. A–39,478 and A–45,566 hereinbefore referred to.

"During all of said times, to-wit: on and since August 18, 1925, and until the month of December, 1928, the said Mrs. Edna Meyer was without a guardian or other representative; no attorney, guardian ad litem or other representative was appointed or acted for the said Mrs. Edna Meyer in said tax suits Nos. A–39,478 or A–45,566, or in the trespass to try title suit No. B–50,121, and no issue as to the mental condition of said Mrs. Edna Meyer was raised by the pleadings or otherwise presented to, or decided by, the courts in either of said tax suits or, in said trespass to try title suit.

"The cause and nature of the insanity of said Mrs. Edna Meyer was dementia precox and at all times prior to the filing of this suit the said Mrs. Edna Meyer was at liberty, transacting her own business, renting her other property, collecting such rents and expending the same without interference, making frequent trips alone, and at one time going to California, and at the time of filing this suit she was returning from a trip to Europe; the mental condition of said Mrs. Edna Meyer was known to the members of her family, which consisted of a mother, sisters and brothers; and no efforts were made to have said Mrs. Edna Meyer declared insane until after the filing of this suit and until the latter part of November, 1928, when she was adjudged insane and her brother Alfred Lissner was appointed guardian of her estate, on an application filed therefor after the filing of this suit; but in explanation of the delay in having said Mrs. Edna. Meyer adjudged insane, Eugene Lissner, one of her brothers (Alfred Lissner being prevented from attending the trial) testified that the family took no steps to have her declared insane out of deference and consideration for the condition of their mother who died in September, 1928, and because they did not know the extent of the irresponsibility of said Mrs. Edna Meyer with reference to her property. In this connection one of the witnesses for plaintiff testified that he had told said Alfred Lissner 'a year or two ago' that said Mrs. Edna Meyer refused to pay taxes and that he, the said Alfred Lissner, had better look into the matter; while Eugene Lissner, one of the brothers of said Mrs. Edna Meyer, and who represented the family and plaintiff at the trial of this cause testified that the first knowledge that any of the members of the family had of the tax suits or the suit in trespass to try title was through the means of a letter written to one of the sisters on October 20, 1928, by R. B. Allsup who had sold the property in question to said Mrs. Edna Meyer, and which said letter was introduced in evidence. It was further testified by the said Eugene Lissner that he and the other brothers of said Mrs. Edna Meyers were each, at all the times concerned, able to pay the taxes on the property, or to redeem the same from said tax sales, and would have done so had they known of the delinquent taxes, or the tax sales.

"Said premises are in the possession of the defendant State Mortgage Corporation, and said State Mortgage Corporation has been since about November 8, 1928, and still is, collecing rent on said premises at the rate of $25.00 per month.

"The only right, title, interest or claim which the defendant N. N. Basila has in, to

or upon said property is by virtue of the above-shown earnest receipt and contract from and with said State Mortgage Corporation, dated October 19, 1928; and the only amount which has been paid by N. N. Basila on account of said property is $100 earnest money as shown in said contract; and at the time said N. N. Basila entered into said contract he had no personal knowledge of the title of said property or of said tax sales, or of the judgment in the trespass to try title suit which had been rendered in favor of the said State Mortgage Corporation in said cause No. B—50,121, and therefore, in no manner relied on said tax deeds or said judgment in making said contract, but said tax sales and judgment were matters of record at the time.

"Neither the State Mortgage Corporation nor N. N. Basila had any notice, actual or constructive, of the insanity of the said Edna Meyer until after the said 19th day of October, 1928, and shortly before the filing of this suit."

The facts show Mrs. Meyer was insane when the two judgments for taxes were rendered against her by default, and appellant seeks to set aside the judgments, the one rendered in 1926 and the other in 1927, and on May 4, 1926, the property of Mrs. Meyer was sold under order issued by virtue of the first judgment, and the mortgage corporation was the purchaser, for the sum of $43.09. The sale under the second judgment was had on January 3, 1928, to the mortgage corporation, for the sum of $41.96. Thus the record discloses that property worth $7,500 belonging to a crazy woman was sold for the sum of $85.05. Were the tax sales valid and binding as against the insane woman?

It is the contention of appellant that it was the duty of the court to appoint a guardian ad litem for the insane woman, although knowledge of the mental condition of the woman was not hinted at in pleading or evidence in the two tax suits. To so hold would be equivalent to laying down the rule that, in every case where a defendant fails to appear or answer, it is imperative for the trial judge to appoint a guardian ad litem under the assumption that a person who does not appear and defend a suit against him is either a minor, a lunatic, or an idiot. While article 2159, Revised Statutes, taken in its literal sense, is broad enough to require such construction, it would obviously be in contravention of reason or the orderly procedure in the trial of causes. It is true that the revisers of the Statutes of 1925 omitted the provision previously in the statute, that the appointment of the guardian should be made when "it shall be shown to the court that such * * * person has no guardian," (Rev. St. 1911, art. 1942) but we think it has no significance of an intention to require

the appointment of a guardian ad litem in every case where a defendant does not answer, or to appoint a committee to ascertain if the defendant is a lunatic, an idiot, or a minor, and, if so, if he has a legal guardian. Such procedure would clog the progress of trials and delay the enforcement of just demands. A failure to appoint a guardian ad litem to represent the persons named does not render a judgment void. Taylor v. Rowland, 26 Tex. 293; Wallis v. Stuart, 92 Tex. 568, 50 S. W. 567, 569; Grogan v. Spaulding (Tex. Civ. App.) 155 S. W. 1014. In the first case cited it appeared in the pleadings that one of the defendants was a minor, and the failure to appoint a guardian was held to be an error requiring a reversal, even though not assigned as error. In the cited case of Wallis v. Stuart the court held that, while a judgment against a minor with no guardian was not void, still it is erroneous and may be set aside in a proceeding brought directly to set aside the judgment. The Supreme Court said: "When the error appears upon the face of the record, advantage may be taken of it by an appeal, or a writ of error in the nature of an appeal. If it does not so appear [upon the face of the record], it can be availed of only by a proceeding to set aside the judgment in the court in which such judgment was rendered." It is intimated in that case, however, that the petition to set aside the judgment must show that the minor or lunatic has a good defense to the suit in which the judgment was rendered. We have not seen any case in which the rule is denied, for the same policy must in reason apply to the minor or insane person as to any other case when it is sought to destroy a judgment. If there is no defense to the action, as there was not in this case, then it would be absurd and unreasonable to set aside a judgment when on another hearing the result must be inevitably the same. Insanity would not be a defense to a cause of action which did not arise out of the insanity, and the judgment would not be avoided on that ground alone. There being no allegation of a valid defense to the tax suits, the attack on the judgments therein cannot be sustained.

The action of trespass to try title to the property of Mrs. Meyer was brought by the mortgage corporation after it had bought the property at a tax sale, but before the two years for the redemption of the property had expired. Judgment by default was taken against her. This was alleged in the petition, and the right to redeem such property offered a full defense to the mortgage corporation's suit. The mortgage corporation had no right or authority to prosecute its suit, and had no basis for a judgment in trespass to try title. The court should have set aside that judgment as prayed for by appellant.

The property of Mrs. Meyer, valued at $7,500, was sold on two different occasions for sums amounting in the aggregate to $85.05. Mrs. Meyer was a resident of San Antonio, and the property was in San Antonio. The State Mortgage Corporation was operating in lands and other property in San Antonio. It knew the property it bought on two different occasions and must have been acquainted with its location and value, and knew that it belonged to a woman. The very fact that the woman was cited on two different occasions and failed to answer should have excited the suspicion of any one, individual or corporation, desiring to purchase the land, and have caused inquiry.as to the reason of any owner of such property ignoring suits seeking the foreclosure of a lien on very valuable property to collect small sums due for taxes. The question would naturally arise, Would any sane person living in San Antonio treat with utter indifference suits and sales of such property to collect such miserable sums as were alleged to be due? Inquiry upon the part of the corporation would have disclosed the fact of the mental incapacity of the woman who owned the land. Not only did the mortgage corporation sit by and make no investigation, but it actually failed to pay the accumulating taxes and permitted another sale at which it made another purchase. A purchaser under execution sale stands on the same basis as he would had he purchased at a sale made to him voluntarily by the owner in person. Rev. St. art. 3818. The same rules as to notice will be applied in the one instance as in the other. We have therefore only to inquire in what cases a purchaser from a defendant in execution at private sale is deemed a bona fide purchaser, in order to determine when he will be so considered when buying at sheriff's sale.

As a general rule, inadequacy of price cannot be made the ground of setting aside a sheriff's sale, but the price may be so grossly inadequate as to shock the conscience, and, when such gross inadequacy is considered in connection with the insanity of the defendant against whom the judgment was rendered by default, without a guardian being appointed, it may be made the ground for setting aside the sale. As said in Nichols-Steuart v. Crosby, 87 Tex. 445, 29 S. W. 380, 382: "We are of opinion that the consideration of $5 paid by Sampson for land then worth in the neighborhood of $8,000 is so grossly inadequate that a court of equity cannot consider it a valuable consideration, nor him a bona fide purchaser without notice, within the meaning of the rule." That ruling is sustained in Parks v. Worthington, 101 Tex. 505, 109 S. W. 909; Eastham v. Hunter, 102 Tex. 145, 114 S. W. 97, 132 Am. St. Rep. 854, and other Texas decisions.

The judgment of the district court will be reversed, and it is the order of this court that the judgments for taxes be upheld and sustained, that the judgment obtained by the State Mortgage Corporation against Mrs. Meyer be set aside and held for naught, that the tax sales be set aside and held null and void, and the deeds thereunder to the mortgage corporation be canceled and set aside, that judgment be rendered against the guardian of Mrs. Meyer for the amounts paid by the mortgage corporation at the tax sales, and that the mortgage corporation pay to appellant the rent collected from the property of Mrs. Meyer, less the amount paid at the tax sales, and that the mortgage corporation pay all costs in this behalf expended.

Reversed and rendered.