## WILLIS v. MARTIN.

### No. 2799.

Court of Civil Appeals of Texas. Beaumont.
July 5, 1935.

Rehearing Denied Sept. 25, 1935.

A. T. Norman, of Houston, for appellant.

Richard J. Higgins, of Angleton, for appellee.

WALKER, Chief Justice.

This appeal was prosecuted to 'the Galveston Court of Civil Appeals, then transferred to this court by orders of the Supreme Court. The suit was brought by appellant, Sam Willis, against appellee, J. A. Martin, Jr., sheriff of Brazoria county, praying for a writ of mandamus against the sheriff requiring him to execute to appellant a deed to three certain tracts of land bid in by him under order of sale issued out of the district court of Brazoria county on a judgment foreclosing the tax lien of the state and county on delinquent taxes. The answer of appellee presented the issue that at the foreclosure sale the county attorney, acting for the state, offered to bid for the land the full amount of taxes, costs, penalty, and interest, which bid was refused by the sheriff, who, in lieu thereof, accepted the bid of appellant, which was for a sum less than the amount of the foreclosure judgment.

On trial to the court without a jury, judgment was entered refusing the mandamus. In support of his judgment, the trial court filed the following fact conclusions:

"I find that judgment was rendered in Cause No. 23950, in the District Court of Brazoria County, Texas, in the suit wherein the State of Texas was Plaintiff and Sam Willis was Defendant in favor of the State of Texas and against the Defendant for the sum of $422.83 and interest and costs of suit, and for foreclosure of the tax lien on three tracts of land designated as Tracts No. 1, 2 and 3, and more fully described in Plaintiff's petition; that an order of sale was duly issued in pursuance to said judgment, dated March 5, 1934, and that the Sheriff of Brazoria County levied upon said three tracts of land and that same were duly advertised for sale on May 1, 1934; that on said May 1, 1934, said J. A. Martin, Jr., Sheriff of Brazoria County, offered said three tracts of land separately at public out cry; that there were taxes due on said tract No. 1 in the sum of $294.27 and said tract being offered for sale, A. T. Norman, for and on behalf of Sam Willis, the owner,

bid the sum of $100.00; that Richard J. Higgins, County Attorney for Brazoria County, Texas, was present at said sale, acting for and in behalf of the State of Texas, and offered to bid for said tract for the State the full amount of taxes, interest and costs due under said judgment and sale; that the Sheriff refused to accept the bid of said Richard J. Higgins, County Attorney, acting for the State, and accepted the bid of A. T. Norman, Attorney for Sam Willis; that there were taxes due on said tract No. 2 in the sum of $125.-49, and said tract being offered for sale by the Sheriff, A. T. Norman, for and on behalf of Sam Willis, the owner, bid the sum of $50.00; that Richard J. Higgins, County Attorney, representing the State of Texas, offered to bid for said land for the State the full amount of taxes, interest and costs due under said judgment and sale; that the sheriff refused to accept the bid of Richard J. Higgins, County Attorney, acting for the State, and accepted the bid of A. T. Norman, Attorney for Sam Willis; that the Sheriff then offered for sale tract No. 3, on which there was due the sum of $3.07 as taxes, together with interest and costs of suit and costs of sale; that A. T. Norman, for and on behalf of Sam Willis, the owner, bid the sum of $3.07; that Richard J. Higgins, County Attorney, representing the State, offered to bid for said land for the State the full amount of taxes, interest and costs due and accrued under said tax judgment and under said sale; that the Sheriff refused to accept the bid of Richard J. Higgins, County Attorney, acting for the State, and accepted the bid of A. T. Norman, Attorney for Sam Willis, the owner.

"I further find that the Commissioners' Court of Brazoria County ordered and instructed the Sheriff, J. A. Martin, Jr., not to execute deeds to any of such property so bid in by Sam Willis unless he bid and tender the full amount of tax judgment, interest and costs accrued and due on said property; that after receiving said order from the Commissioners' Court said J. A. Martin, Jr., refused to execute a deed to Sam Willis to the above described property or to accept the tendered cash money offered and bid therefor; and that A. T. Norman, Attorney for Sam Willis, did tender in cash the amount of the bid of Sam Willis for each portion of the property sold as above described, which was all of the property involved in the tax judgment.

"I further find as a fact that the bids of A. T. Norman for the various tracts involved herein and offered for sale were not the highest and best bids offered for said land but that the bids of Richard J. Higgins as County Attorney, representing the State, were the highest and best bids made at said sale."

Appellant, in support of his appeal, cites an opinion by the Attorney General's office filed February 6, 1923, to the effect that, where a bona fide bidder is present and makes a bid on a tax foreclosure sale, the county attorney is without authority to make a bid for the state. The trial judge refused to follow this opinion, basing his judgment on a more recent opinion of the Attorney General's office, being opinion No. 2884 by F. O. McKenzie, Assistant Attorney General of the state of Texas, page 433 of the biennial report of Attorney General Jas. V. Allred, September 1, 1930, to August 1, 1931. We have given careful consideration to this opinion by Mr. McKenzie, and believe that he has correctly construed article 7328, which in part provides: "If there shall be no bidder for such land the county attorney, sheriff or other officer selling the same, shall bid said property off to the State for the amount of all taxes, penalty, interest and costs adjudged against said property." In view of the importance of this question, we are giving the opinion of the Attorney General, as brought forward in the brief of appellee:

"Article 7326 provides for the bringing of suits for the recovery of all taxes, interest, penalty and costs due and for the foreclosure of the tax lien upon lands which are liable for the same. Said article also provides that such suits shall be brought as an ordinary foreclosure for debt with averments as to the existence of a lien upon such land for such taxes, and shall pray for judgment for the foreclosure of said lien and sale of said lands as under ordinary execution.

"Article 7328, or so much thereof as is pertinent to your inquiry, is as follows:

"The proper persons, including all record lien holders, shall be made parties defendant in such suits, and shall be served with process and other proceedings had therein as provided by law in ordinary foreclosure suits in the district courts of this state; and in case of foreclosure an order of sale shall issue and the land sold thereunder as in other cases of fore- closure; but if the defendant or his attorney shall, at any time before the sale, file with the officer in whose hands any such order of sale shall be placed, a written request that the property described therein shall be divided and sold in smaller tracts then (than) the whole, together with the description of such smaller tracts, then such officer shall sell the lands in such subdivisions as defendant may request, and in such case shall sell only as many subdivisions, as near as may be, as are necessary to satisfy the judgment, interest, penalty, and costs; and after the payment of the taxes, interest, penalty and costs adjudged against it, the remainder of the purchase price, if any, shall be paid by the sheriff to the clerk of the court, out of which said execution or other final process issued to be retained by him subject to the order of the court for a period of two years, unless otherwise ordered by the court, after which time the court may order the same to be paid to the State Treasurer, who shall hold same in trust to be paid to the owner against whom said taxes were assessed; provided, any one claiming the same shall make proof of his claim to the satisfaction of the State Treasurer within three years after the sale of said land or lots, after which the same shall be governed by the law regulating escheat.

"If there shall be no bidder for such land the county attorney, sheriff or other officer selling the same, shall bid said property off to the State for the amount of all taxes, penalty, interest and costs adjudged against such property, and the district clerk shall immediately make report of such sale in duplicate, one to the Comptroller and one to the commissioners Court, on blanks to be prescribed and furnished by the comptroller. Where the property is bid off to the State, the sheriff shall make and execute a deed to the State, using forms to be prescribed and furnished by the Comptroller, showing in each case the amount of taxes, interest, penalty and costs for which sold, and the clerk's fees for recording deeds. He shall cause such deeds to be recorded in the records of deeds by the county clerk in his county, and when so recorded, shall forward the same to the Comptroller. The county clerk shall be entitled to a fee of one dollar for recording each such deed to the State, to be taxed as other costs. When land thus sold to the state shall be redeemed the tax collector shall make the proper distribution of the moneys receiv-

ed by him in such redemption, paying to each officer the amount of costs found to be due, and to the State and county the taxes, interest and penalty found to be due each respectively." ,

"The question involves the proper construction of the language 'if there shall be no bidder for such land.' This means, of course, the particular land which is being sold under order of sale issued on a a tax foreclosure judgment. Does the word, 'bidder' mean one who bids for the land although he bids less than the amount of the judgment; or does it mean or imply one who bids a sum equal to or exceeding the amount of the State's judgment? I have been unable to find a case where the question has been passed on by the courts, and hence will undertake to answer the same in accordance with what I conceive to be adopted rules of construction.

"'Another occasion for construing a statute is where uncertainty as to its meaning arises not alone from ambiguity of language employed, but from the fact that giving a literal interpretation to the words will lead to such unreasonable, unjust or absurd consequences as to compel a conviction that they could not have been intended by the Legislature.' 25 R. C. L., Sec. 214, p. 959.

"I quote the above because it may be said that the language of the statute, 'if there shall be no bidder' is perfectly plain and unambiguous and requires no construction. In this connection, I call attention to the following taken from the same authority, viz:

"'It often happens that the true intention of the lawmaking body, though obvious, is not expressed by the language employed in a statute when that language is given its literal meaning. In such cases, the carrying out of the legislative intent, which, as we have seen, is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed. Hence, the courts are not always confined to the literal meaning of a statute; the real purpose and intent of the legislature will prevail over the literal import of the words.' 25 R. C. L., Sec. 222, page 967.

"Numerous authorities from other states and the United States and some from Texas are cited in support of the above doctrine of the text.

"'The paramount rule of construction is to find out the legislative intent, which is the law and must prevail.' Ellis County v. Thompson, 95 Tex. 22, 32, 64 S. W. 927, 66 S. W. 48.

"'The Legislative intent constitutes the law.' McInery v. City of Galveston, 58 Tex. 334; Russell v. Farquhar, 55 Tex. 355.

"'Strictly speaking, there is but one rule of construction, and that is the legislative intent must govern; all other canons of interpretation, so called, are. but grounds of arguments resorted to for the purpose of ascertaining the true meaning of the law.' Mills County v. Lampasas County, 90 Tex. 603, 606, 40 S. W. 403, 404; Imperial Irrigation Company v. Jayne, 104 Tex. 395, 138 S. W. 575, 581, Ann. Cas. 1914B, 322; Koy v. Schneider, 110 Tex. 369, 218 S. W. 479, 221 S. W. 880.

"'The intention of the Legislature in enacting a law is the law itself.' Edwards v. Morton, 92 Tex. 152, 153, 46 S. W. 792.

"'The great fundamental rule in construing statutes is to ascertain and give effect to the intent of the Legislature.' 36 Cyc. 1106, 2.

"I am unable to bring myself to the belief that in all cases where the State has a judgment condemning land to be sold for the payment of taxes, the Legislature intended the State should be without the power to protect its interests and that of the county. But it is our opinion that what is meant by the language of the statute, 'If there shall be no bidder for such land' the county attorney, sheriff or other officer selling the same, shall bid said property off to the State for the amount of all taxes, penalty, interest and costs adjudged against such property, means that if there is no person who bids the amount of the judgment against the said land. Although he may bid less, it is made the duty of one of the officers named to protect the interests of the State by bidding to the extent authorized by the State's judgment against the land. If the bidder should bid the amount owing, or more, the State then cannot bid; for in such circumstances the State would be competing as a mere purchaser when it is authorized to go no farther than is necessary to protect its interests.

"I think there is language in said Article which tends to support this construction. The Article states that in case of

foreclosure, an order of sale shall issue and the land sold thereunder as in other cases of foreclosure. It further provides after the officer executing the order of sale has received the proceeds and from them paid the taxes, interest, penalty and costs adjudged against the land, as to what he shall do with the excess. Nowhere is there any provision prescribing the procedure to be followed in a case where the land does not bring the amount of the judgment against it. In an ordinary foreclosure sale, article 2218, which relates thereto, provides a procedure in event the proceeds of the property sold does not satisfy the judgment, directing the sheriff to make the balance as under execution, using the unsatisfied order of sale as an execution. No such alternative is provided for in the statute governing delinquent tax sales under order of sale. From the provisions of the statute directing the sheriff to pay from the proceeds the taxes, interest, penalty and costs, and the 'remainder of the purchase price, if any' to the clerk of the court, there arises the clear implication that the land is to bring at least enough to satisfy the judgment. In case the land is bid in for the State, the bid must be for the full amount against the land, and provision is further made that when said land shall be redeemed, 'The tax collector shall make the proper distribution of the moneys received by him in such redemption, paying to each officer the amount of costs found to be due, and to the State and county the taxes, interest and penalty found to be due each respectively.' So it appears that whether the land is sold to an outside bidder or bid in for the State, provision is made for the ultimate payment in full of the taxes, interest and penalty.

"It is obvious that in the event the land is sold to an outside bidder for less than the amount adjudged against it, complications and difficulties will arise, and the Legislature has furnished no guide for their solution. One part of the judgment is State taxes, another part county taxes, and still other sums which go to make up the total of the judgment are composed of costs of different officers. In such a case the judgment could not be paid in full and all the parties at interest could not get all their money. What should be done in that case? Is the State's interest superior to the county's interest or will the money be prorated between them? Are the officers to be paid first, or **are** their claims

to be postponed until the claims of the State and the county are paid? I think it reasonable to assume that the Legislature intended no such complications, otherwise, it would by appropriate enactment have provided for them.

"I am aware that this opinion is in conflict with an opinion sent out from the Attorney General's Department on the 6th day of February, 1923, but with such opinion I cannot agree. In support of that opinion the holding by the Court of Civil Appeals in Gibbs v. Scales, 54 Tex. Civ. App. 96, 118 S. W. 188, is quoted from as follows:

" 'It will be noted that the statute quoted above requires the land to be bid in for the state only when there are no bidders for the same, thus evidencing the policy of the state to become the purchaser only when it is necessary to do so in order to collect the taxes due.'

"I submit that the holding above quoted does not militate against my conclusion, but, on the contrary, tends to sustain it. If the language of the statute evidences the policy of the State to become the purchaser only when it is necessary to do so in order to collect the taxes due, then the converse is true and the policy of the State is that it may become purchaser only when it is necessary in order to collect the taxes due. The only way provided by which the taxes due may be collected in every case is to permit the State to bid an amount sufficient to cover the same in event no other bidder does so.

"I submit that this question was only incidentally involved in the Gibbs Case. In that case the county attorney bid the land in his own name and took title thereto. But it is inferable, although not directly stated, that there were other bidders and that the bid of the county attorney amounted to at least enough to satisfy the State's judgment. The real question was whether the county attorney had the right to buy the land or not. The Court of Civil Appeals held in the Gibbs Case that he did not have such right, but this holding seems to be overturned by an opinion of the Commission of Appeals in Harrison v. Orr, 296 S. W. 871.

"My conclusion is entirely consistent with the established doctrine that a tax sale may be set aside for gross inadequacy of price and any slight irregularity. Harrison v. Orr, supra. In a sale by a sheriff the price paid may be so grossly inade-

quate that a court of equity will not consider it a valuable consideration, nor the purchaser a bona fide purchaser within the meaning of the law. This was held in the case where land worth in the neighborhood of $8,000.00 was sold for $5.00. Nichols-Steuart v. Crosby, 87 Tex. 443, 445, 453, 29 S. W. 380; Lissner v. State Mortgage Corporation (Tex. Civ. App.) 29 S.W.(2d) 849, 853.

"Assume that the State has judgment foreclosing a tax lien to the amount of $250.00 on land worth $5,000.00. Suppose that the sheriff's sale the sum of $10.00 is bid by an outsider, and the land is knocked off to him. Under the construction which we are combating, and in accordance with what may be the literal language of the statute, the State's hands would be tied and its officers could only stand by, helpless, and see the State's interests sacrificed in that manner. After the sale, it would be the duty of the sheriff to execute a deed to the purchaser and then the taxpayer would have two years in which to redeem his land and he could redeem it by paying double the amount of such bid. Such a thing could easily happen and no doubt has happened heretofore. We cannot believe that the Legislature intended any such absurd results.

"I reiterate my conclusion, that by the term 'bidder' used in the statute giving the State the right to bid in lands sold under a tax judgment, the Legislature meant a person who bids at least the amount of the judgment against the land, taxes, interest, penalty and costs, and if no such bidder appears, then the proper officer may bid in the land for the State as the law provides; and that no person would necessarily be considered a 'bidder' within the meaning of the statute, so as to preclude the proper officer from bidding same in for the State, unless his bid is for a sum at least sufficient to satisfy the judgment against the land."

The judgment of the lower court is affirmed.

### On Rehearing.

One phase of this case was not emphasized in the original opinion. Appellant, Sam Willis, owed the taxes in controversy. Judgment against him for these taxes was duly taken by the state of Texas, with foreclosure of tax lien against his property. This was an honest debt due by him to his state; certainly it should not be said that he had the right, unless such was the imperative construction of the tax laws, to defeat this debt in part by bidding in his own property at his own tax sale for less than the amount of the taxes, when the state was tendering a bid for the full amount of the tax debt.

The motion for rehearing is in all things overruled.