BANDERA INDEPENDENT SCHOOL DISTRICT, Bandera Downs, Inc., and Bandera Financial Management, Inc., Appellants,

v.

A.G. HAMILTON, Appellee.

No. 04–98–00590–CV.

Court of Appeals of Texas, San Antonio.

May 26, 1999.

Rehearing Overruled Aug. 18, 1999.

Don W. Saunders, Law Offices of Don W. Saunders, San Antonio, Eric W. Schulze, Daniel M. Matt Burns, Walsh, Anderson, Brown, Schulze & Aldridge, P.C., Austin, for appellant.

Richard C. Mosty, Keith & Weber, P.C., Kerrville, Robert Q. Keith, Keith & Weber, P.C., Johnson City, K.H. Schneider, County Atty., Bandera, Eino Zapata, Zino Zapata, P.C., H. Ritman Jons, Kerrville, Ronald R. Del Vento, Asst. Atty. Gen., Austin, for appellee.

Sitting: CATHERINE STONE, Justice PAUL W. GREEN, JUSTICE KAREN ANGELINI, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

This clash between an individual taxpayer and an independent school district calls into question the authority of a school district to purchase real property at a tax foreclosure sale for an amount in excess of

delinquent taxes owed on the property. Also at issue is what type of notice a school district must give to the public before making a cash purchase of real property.

A.G. Hamilton, a taxpayer in Bandera County, brought suit against Bandera Independent School District to set aside the District's purchase of real property at a tax foreclosure sale and to enjoin the District from bidding on property at future foreclosure sales in excess of certain limits. Because we hold that Bandera Independent School District ("BISD") was not precluded by TEX. TAX CODE ANN. § 33.50(b) or § 34.01 (Vernon Supp.1999) from bidding for the property at the sheriff's sale in excess of the tax judgment against the property, we reverse the judgment of the trial court and remand the cause to the trial court for a determination of the appropriate distribution of excess funds from the sale of the property in question.

### FACTUAL AND PROCEDURAL BACKGROUND

Delinquent property taxes on three tracts of land were owed to both BISD and Bandera County. BISD obtained a default judgment against the landowner, Bandera Downs, Inc., in November of 1997. The judgment ordered the sheriff to hold a tax foreclosure sale and to sell off the property to the highest bidder to satisfy the judgment. The sale was set for February 3, 1998.

BISD had been considering building a new campus and found the Bandera Downs racetrack site an ideal location. By February of 1998, BISD had funds available to purchase the land without a bond issue.[1] On February 2, the school board authorized the superintendent to bid on the property at the tax sale from available funds in BISD's current account. BISD did not publish any notice expressing an

---

1. Hamilton notes that the possibility of purchasing this property for $3,000,000 had previously been presented to the citizens of Bandera County as part of a $15,000,000 School District bond election. The bond issue was defeated by a substantial number of the voters. Additionally, a citizens' committee had studied the needs of the District, and concluded that acquisition of the racetrack was not warranted.

intent to make payments under a contract prior to the foreclosure sale. At the sale, BISD obtained the property with a high bid of $1,475,000, an amount well within its available fund balance. A check for the purchase was written and delivered to the sheriff on the day of the sale. A week later, Hamilton filed suit seeking both declaratory relief (to declare the sale void) and injunctive relief (to prevent future expenditures on the land in excess of the amount of delinquent taxes). The next day the sheriff executed a deed on the racetrack which was recorded; he also disbursed various checks paying BISD and Bandera County the taxes due to those entities and costs of judgment. The excess funds were deposited in the registry of the court, with notice given to Bandera Downs and other claimants. Hamilton thereafter secured a temporary injunction to preserve the status quo, and the case proceeded to trial on the merits two months later. After a bench trial, the district court declared void BISD's purchase of the real property. The court also permanently enjoined BISD from bidding at future foreclosure sales for any more than the lesser of (1) its subrogated rights in the total amount of the underlying judgment or (2) the market value of the property.

## JURISDICTION

Initially we note two related jurisdictional issues raised by BISD and Bandera Downs. BISD argues that the trial court erred in proceeding to trial because Hamilton failed to comply with statutory filing prerequisites that apply when tax foreclosure sales are challenged. Specifically, BISD claims that under TEX. TAX CODE ANN. § 34.08 (Vernon Supp.1999), Hamilton was required to deposit into the registry of the court the amount of the

delinquent taxes, penalties, and interest specified in the foreclosure judgment, or file an affidavit of inability to pay. Hamilton responds that section 34.08 does not apply to him, and that if it does apply he substantially complied with the provision. Alternatively, Hamilton claims the statute violates the open courts provisions of the Texas Constitution. The district court concluded that Hamilton substantially complied with section 34.08.

Similarly, Bandera Downs challenges Hamilton's standing to pursue this claim. Because Hamilton has admittedly suffered no particularlized damages as a result of BISD's purchase of the racetrack property, Bandera Downs claims he is not entitled to injunctive relief.[2] Bandera Downs relies on long-standing law that precludes such action by taxpayers, unless the challenge is to future illegal expenditures of funds. *See Hoffman v. Davis,* 100 S.W.2d 94, 128 Tex. 503 (Tex.Com.App.1937) (holding that right of taxpayer suffering no particularized damage to enjoin public spending is limited to cases of proposed illegal expenditures).

In the interest of judicial economy, we will assume without deciding that Hamilton fulfilled all statutory filing prerequisites and that he has standing to pursue his claims against BISD. Regardless of the merits of these preliminary issues, the result is the same: the District's purchase of the Bandera Downs racetrack does not violate the Texas Tax Code or the Texas Local Government Code.

## STANDARD OF REVIEW

We are called upon to review the trial court's construction of three statutory provisions. Interpretation of statutes is a question of law subject to *de novo* review. *Mitchell Energy Corp. v. Ashworth,* 943

2. The record reveals that Hamilton, a nonpracticing lawyer and an experienced business man, had previously attempted to broker a sale of the Bandera Downs racetrack to an Indian tribe for possible development as a gambling enterprise. Had his efforts been successful, he would have earned a substantial fee. There is no evidence, however, that Hamilton's efforts to facilitate the sale and development of this property were still ongoing at the time of the sheriff's sale.

S.W.2d 436, 437 (Tex.1997). Accordingly, we give no particular deference to the trial court's findings on the law; rather, it is our duty to independently evaluate and interpret the statutes. *See Pulido v. Dennis,* ·888 S.W.2d 518, 520 (Tex.App.—El Paso 1994, no writ).

### SCHOOL DISTRICT'S ABILITY TO BID IN EXCESS OF A TAX JUDGMENT

■ Hamilton successfully argued in the trial court that under Texas Tax Code sections 33.50 and 34.01, BISD was only entitled to bid the lesser of the amount of its tax judgment or the market value of the property. Section 33.50 provides in pertinent part:

> If the judgment in a suit to collect a delinquent tax is for the foreclosure of a tax lien on property, the order of sale shall specify that the property may be sold to a taxing unit that is a party to the suit or to any other person ... for the market value of the property stated in the judgment or the aggregate amount of the judgments against the property, whichever is less.

TEX. TAX CODE ANN. § 33.50(b) (Vernon 1998). Similarly, section 34.01 provides:

> If a sufficient bid is not received, the officer making the sale shall bid the property off to a taxing unit that is a party to the judgment for the aggregate amount of the judgment against the property or for the market value of the property, whichever is less.

TEX. TAX CODE ANN. § 34.01(c) (Vernon Supp.1999).

Hamilton contends that the object of foreclosure sale statutes is to ensure that a governmental entity receives the amount of taxes due, and that the statute's purpose is met if the stated limits are placed on the amount a taxing unit can bid. Hamilton also cites Attorney General opinions stating that a taxing unit that is a party to a delinquent tax judgment may purchase the real property upon which the delinquent taxes are owed if the bid at a tax sale is insufficient. Hamilton argues that public policy issues arise when a taxing entity enters into a competitive bidding process, using taxpayers' dollars to bid against its own taxpayers. He voices a variety of public policy concerns regarding collusion, strawman bidding, and delinquent taxpayers gaining the benefit of taxpayer dollars. Although the trial court did not pass on any of Hamilton's policy arguments, the court concluded that BISD could not lawfully bid in excess of its tax judgment at the foreclosure sale. We disagree.

These statutes do not in any way indicate that they provide anything more than a minimum at which the taxing unit can purchase property. As BISD contends, section 33.50 establishes a minimum requirement for a valid bid and section 34.01 provides the procedures to be followed when the minimum bid is not received. This is entirely consistent with Hamilton's belief that the object of a foreclosure sale is to ensure that an entity receives taxes due; this purpose is not thwarted by a taxing entity bidding more than the minimum.

The supreme court's decision in *Clint I.S.D.* affirms our interpretation of the statutes. In *Clint I.S.D.,* the Texas Supreme Court interpreted section 33.50(b) and held that the language in the statute sets a floor on bids at a sale, not a ceiling.[3] *Clint Indep. Sch. Dist. v. Cash Inv., Inc.,* 970 S.W.2d 535, 537 (Tex.1998). While Hamilton is correct in asserting that the court was addressing the statute as it applied to a non-taxing party, our reading of the applicable language does not indicate that the minimum bid requirement is changed simply because the taxing unit is involved.

Hamilton relies on *Willis v. Martin,* 85 S.W.2d 1085 (Tex.Civ.App.—Beaumont

---

**3.** In *Clint I.S.D.,* the court was interpreting the prior version of section 33.50(b) as the suit was brought before September 1, 1997, but noted the current version resulting from the 1997 amendment. *See* 970 S.W.2d at 537, n. 2.

1935, writ ref'd), for the proposition that under the former version of 34.01 a taxing unit may not bid if a sufficient bid has already been received. *Willis*, 85 S.W.2d at 1088. In *Willis*, even though the case did not involve a situation in which the taxing unit bid in excess of the judgment against the property, the court noted that the State may only become the purchaser of property to protect its interest when an insufficient bid has been made as authorized under the statute. *Id.* To the extent that the *Willis* decision or opinions of the attorney general conflict with our holding today, we choose not to follow them. Instead, we rely on a plain reading of the statutes and the Texas Supreme Court's most recent relevant opinion. Additionally, many of Hamilton's fears about public policy ramifications require a great deal of speculation on the court's part, and we will not override the plain meaning of the statutes based on what a party asserts *might* happen. Thus, we conclude that the statutes only specify a minimum purchase price at which a taxing unit may purchase property, not a ceiling. BISD's second point of error is sustained.

### Texas Public Property Finance Act

■ The district court concluded that BISD was required to comply with Tex. Local Gov't Code § 271.004 (Vernon 1998) before purchasing the racetrack property, by publishing notice 60 days prior to the purchase. Section 271.004 provides that if a school district enters a contract for the purchase or acquisition of real property, the board shall publish notice of an intent to enter the contract not less than 60 days before the approval of the contract in a newspaper with general circulation in the district. Tex. Local Gov't Code § 271.004 (Vernon Pamph.1999). Such notice must summarize the major provisions of the proposed contract. *Id.*

■ BISD maintains that this purchase was not a financed transaction and did not result in a contract, because the purchase involved a single, lump sum cash payment. BISD argues that purchases from available funds do not entail the same concerns as do purchases under a finance contract. BISD also contends that this transaction did not fall under the definition of a contract in section 271.003(2). Conversely, Hamilton argues that section 271.004 is not limited to financed transactions. Hamilton contends that the "sale" of the property does constitute a "contract." An auction sale, by common interpretation, involves an offer and an acceptance and a passing of title. He also contends that to hold otherwise would allow the school district to abuse the legislative process for the purchase of land. In this case, voters rejected the purchase of the property in question for $3,000,000 in a bond issue. Nonetheless, the Board met the night before the auction and decided to buy the land from money in its available funds, thereby using taxpayers' money to purchase property the taxpayers had already rejected. This conduct by the school board—a virtual thumbing of its nose at the taxpayers—has no doubt frustrated Hamilton and other residents of the district. Yet BISD's conduct must be assessed in light of applicable statutes and decisions, not voter dissatisfaction.

A plain reading of the Texas Public Property Finance Act infers the exclusion of lump sum purchases. Section 271.002 provides that the purpose of the Finance Act is to provide a "means to purchase or otherwise acquire, use, and finance public property." Tex. Local Government Code Ann. § 271.002 (Vernon Supp.1999). The Act also defines a contract as "an agreement made under this Act." *Id.* § 271.003. References to "contract" throughout the Act infer that payments and interest rates will be involved. *Id.* §§ 271.004(e), 271.005. As BISD notes, public schools have generally been permitted to purchase property through available fund purchases. *See Kyburz, Ferrell, Heesch v. Magnolia Indep. Sch. Dist.*, 476 S.W.2d 763, 765 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.) (noting that certain statutes have

been construed as showing the general policy of the Legislature to limit expenditures by school boards to available funds); *Flatonia Indep. Sch. Dist. v. Broesche,* 176 S.W.2d 223, 225 (Tex.Civ.App.—Austin 1943, writ ref'd) (noting the general policy of the Legislature to limit expenditures by school boards to available funds); *Harlingen Indep. Sch. Dist. v. C.H. Page & Bro.,* 48 S.W.2d 983, 986 (Tex.Com.App.—1932, no writ) (noting that the powers of the school board to expend the funds of the district are limited to an available fund).

To construe the Public Property Finance Act as covering all types of purchases would lead to unreasonable results. As BISD notes, this interpretation would require BISD to give notice before purchasing property at an auction for the minimum bid. In light of the fact that a school district could not know in advance whether such a purchase would occur, this construction would place an unreasonable burden on a school district. While a contract, by legal definition, includes a bid (or offer) and an acceptance, as occurred here, we conclude that the Legislature did not intend to include such purchases in the Texas Public Property Finance Act. To avoid such a result, we hold that the Texas Property Public Finance Act does not include cash purchases made with moneys from available funds. BISD's fourth point of error is sustained.

The judgment of the trial court is reversed and judgment is rendered in favor of Bandera Independent School District. The cause is remanded to the trial court for a determination of the appropriate distribution of excess funds from the sale of the property in question.